634 So.2d 180 (1994)
John Edward HOUCK, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 92-2842.
District Court of Appeal of Florida, Fifth District.
March 4, 1994.
*181 Irby G. Pugh, Orlando, and David A. Henson of Kirkconnell, Lindsey & Snure, P.A., Winter Park, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Carmen F. Corrente, Asst. Atty. Gen., Daytona Beach, for appellee.

ON MOTION FOR REHEARING EN BANC
COBB, Judge.
We have considered this case en banc, pursuant to motion by the appellant urging that the original panel decision herein contravened Dixon v. State, 603 So.2d 570 (Fla. 5th DCA), rev. denied, 613 So.2d 9 (Fla. 1992) and further urging that this case is one of exceptional importance. We withdraw our prior opinion issued under date of October 22, 1993 and substitute this opinion therefor.
The appellant, John Edward Houck, Jr., was charged with second degree murder. The information alleged that the defendant
did ... an act imminently dangerous to another, and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual, kill and murder GEORGE TOMMIE CARTER, by inflicting blunt force trauma to the head of GEORGE TOMMIE CARTER and in the course thereof did use a weapon; to wit: pavement or a hard surface.
At trial, the state presented evidence that Houck was the aggressor in a brawl in a parking lot. Witnesses testified that they observed Houck straddling the victim, shaking him by the back of his shirt, and repeatedly banging the side of the victim's head against the asphalt surface. The victim died several weeks later from "blunt force trauma."
The jury returned a verdict finding Houck guilty of the lesser-included offense of manslaughter with a weapon. On appeal, Houck contends that the trial court erred in reclassifying the defendant's manslaughter conviction to a first degree felony based on the *182 defendant's use of a weapon because "it is legally and physically impossible for the ground, or any paved surface, to be a weapon for reclassification purposes." The state contends that the trial court properly submitted the issue of whether the pavement constituted a weapon to the jury.
This appeal requires analysis of section 775.087(1), Florida Statutes (1991), the reclassification statute.[1] In undertaking that analysis we must start with the established principle that penal statutes are to be strictly construed and any ambiguity therein is to be resolved in scope and application in favor of the accused. See Perkins v. State, 576 So.2d 1310, 1312 (Fla. 1991); Duba v. State, 446 So.2d 1167, 1169 (Fla. 5th DCA 1984).
The statute reclassifies a second degree felony to a first degree felony if the defendant "carries, displays, uses, threatens, or attempts to use any weapon or firearm." Chapter 775 does not define "weapon"; therefore, as we held in State v. Little, 400 So.2d 197, 198 (Fla. 5th DCA 1981), we must apply the common or ordinary meaning of that word. See also, State v. Buckner, 472 So.2d 1228 (Fla. 2d DCA 1985). The word "weapon" is defined by Webster's New Collegiate Dictionary:
1: an instrument of offensive or defensive combat: something to fight with 2: a means of contending against another.
Clearly, a paved surface is not commonly understood to be an instrument for combat against another person. Even if we resort to Chapter 790, which relates to weapons and firearms, the definition of a "weapon" therein does not avail the state. That definition is:
any dirk, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon except a firearm or a common pocketknife.
§ 790.001(13), Fla. Stat. (1991).
The rule of "ejusdem generis" provides that where general words follow an enumeration of specified persons or things, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned. See Black's Law Dictionary, 464 (5th ed. 1979). Therefore, the general words "other deadly weapon" cannot be construed as encompassing a paved surface, which is not in the same general class as those instruments and devices enumerated in the statute. A paved surface is an immovable structure that is incapable of being personally possessed, handled, or wielded in the manner of a dirk (knife), club or chemical device.
We agree with Houck's argument in his motion for rehearing that the original panel was in error in deeming the issue of whether a paved surface is a weapon to be one of fact.[2] It is not. It is a question for the court to determine as a matter of law. The failure of the statute to broadly define the term "weapon" cannot be cured by jury speculation. As Houck contends, the panel opinion would open a veritable "Pandora's Box" and allow a creative prosecutor, in conjunction with the jury, to turn almost any intentional injury into one caused by a weapon. For example, would the ground be transformed into a weapon merely because it was the point of impact for a person pushed from a cliff or high building? Would the water become a weapon if the victim was pushed overboard from an ocean liner?
Other jurisdictions have strictly construed their statutes to conclude that pavement and *183 other stationary fixtures are not dangerous or deadly weapons. In State v. Legendre, 362 So.2d 570 (La. 1978), the Supreme Court of Louisiana held that a concrete parking lot did not constitute a "dangerous weapon" for purposes of proving aggravated battery despite the broad definition given that term by the legislature. The court stated that
By the plain words of the article defining dangerous weapon it includes any gas, liquid or other substance or instrumentality used in a manner calculated or likely to produce death or great bodily harm. A dangerous weapon is not by that definition or any other an expanse of concrete forming a parking lot; just as it is not a graveled area or the turf in a meadow. We realize that the accused could use the concrete of the parking lot by striking the victim a blow which would cause him to fall upon the concrete and sustain injuries. But this is not "use" of a "weapon". No other "use" of the concrete parking lot has been suggested which would produce death or great bodily harm.
Legendre, 362 So.2d at 571. The court further stated that, in seeking to convert the offense into aggravated battery,
the State is attempting to extend the article of the Code so as to create a crime not provided for therein, contrary to the spirit and letter of the law. This is not genuine construction of the term dangerous weapon as contemplated by the statute defining aggravated battery. According to the fair import of the words, in their usual sense dangerous weapon does not mean a concrete parking lot.
Id. at 571-72.
One seeking to distinguish the Legendre case from the present case may contend that here the state is alleging a more specific use of the pavement by which the defendant caused the victim's injuries, i.e., that the defendant repeatedly pounded the victim's head into the pavement. In Edwards v. United States, 583 A.2d 661, 662 (D.C. 1990), however, the District of Columbia Court of Appeals rejected a similar argument even where the prosecution proved that the defendant severely injured and permanently disfigured his wife by "repeatedly slamming her head against the bathtub, sink and toilet in the bathroom of their apartment." The D.C.Code provided for enhanced sentences for
[a]ny person who commits a crime of violence ... when armed with or having readily available any ... firearm ... or other dangerous or deadly weapon (including a sawed-off shotgun, shotgun, machinegun, rifle, dirk, bowie knife, butcher knife, switchblade knife, razor, blackjack, billy, or metallic or other false knuckles).
Edwards, 583 A.2d at 663. As with the Florida Statutes, the D.C.Code failed to provide a definition for "dangerous or deadly weapon." In a previous opinion, the court had stated that "an instrument capable of producing death or serious bodily injury by its manner of use qualifies as a dangerous weapon." Id. at 664 (emphasis added) (quoting Powell v. United States, 485 A.2d 596, 601 (D.C. 1984), cert. denied, 474 U.S. 981, 106 S.Ct. 420, 88 L.Ed.2d 339 (1985)). Noting that the statute should be strictly construed in favor of the defendant, the court stated that the issue was whether the bathroom fixtures were plainly and unmistakably "dangerous or deadly weapons" with which the defendant could be "armed" or which he could have "readily available" within the meaning of the statute. Id. at 663. According to the court, the specific dangerous instrumentalities enumerated in the statute were:
all items which an assailant carries and then uses to shoot, stab, or otherwise wound his adversary. They do not include stationary objects or anything resembling them.
Id. at 664. The court recognized the logic employed by other jurisdictions which had held that a concrete sidewalk could constitute a dangerous weapon or instrument:
If [the defendant] had detached the commode from the floor and bludgeoned his wife with it, there would be no question that he would have been armed with a dangerous weapon within the meaning of [the statute]. The same damage could be done where the commode was still but the victim's head was in motion.
*184 Id. at 667. Declining to adopt the more expansive approach of these jurisdictions, the court strictly construed the statute to hold that a stationary fixture, such as a sink, commode, or bathtub, could not be a weapon within the statute's meaning.
Here, the underlying fallacy of the state's argument is that it misconceives the legislative intent underlying the reclassification statute. The obvious legislative intent reflected by section 775.087 is to provide harsher punishment for, and hopefully deter, those persons who use instruments commonly recognized as having the purpose to inflict death and serious bodily injury upon other persons. It is safe to say that the legislature did not intend to discourage the paving of parking lots. In the instant case, the state's focus should not have been on the hardness of the pavement but rather on the egregious nature of Houck's conduct. Therefore, instead of attempting to characterize the pavement as a weapon, the state arguably could have alleged, and submitted for jury determination, that Houck committed an aggravated battery in the course of the commission of Carter's homicide, whether second degree murder or manslaughter. Aggravated battery, as well as the use of a weapon, is a basis for reclassification under section 775.087. Aggravated battery may be committed by intentionally or knowingly causing great bodily harm. See § 784.045(1)(a), Fla. Stat. (1991).
Accordingly, we reverse the defendant's conviction for the first degree felony of manslaughter with a weapon and remand for resentencing for the second degree felony of manslaughter.
Since the issue we have addressed in this opinion  the meaning of the word "weapon" as used in section 775.087(1), Florida Statutes (1991)  is one of first impression at the appellate level and one which may impact upon future cases and jury instructions, we certify it to the Florida Supreme Court as one of great public importance.
REVERSED AND REMANDED.
W. SHARP, GRIFFIN and THOMPSON, JJ., concur.
DAUKSCH, J., concurs and concurs specially, with opinion.
HARRIS, C.J., dissents with opinion in which GOSHORN, PETERSON and DIAMANTIS, JJ., concur.
DIAMANTIS, J., dissents with opinion in which GOSHORN and PETERSON, JJ., concur.
DAUKSCH, Judge, concurring specially.
I concur with the result reached in the majority. I depart only slightly. In my judgment it is not always a question of law or always a question of fact as to whether an object is a deadly weapon. In this case I agree it was a question of law; that is, it was error to submit the deadly weapon issue to the jury.
Finally, I commend both the majority opinion writer and the dissenters for their imaginative reasoning, or maybe better said vivid imaginations, harkening one back to law school.
HARRIS, Chief Judge, dissenting.
I respectfully dissent. But not from the answer provided by the well reasoned majority opinion. It is a good answer; it is the question that is problematic. The majority's analysis logically flows from its determination that the question posed by this case arises from a legislative policy that "is to provide harsher punishment for, and hopefully deter, those persons who use instruments commonly recognized as having the purpose to inflict death and serious bodily injury upon other persons." Because I am unwilling to so limit the legislative policy, I must dissent from the question and, therefore, the opinion.
Section 775.087(1) uses the terms "carry" and "use" in the disjunctive. This indicates that the legislature is concerned not only with how the weapon gets to the site of the assault but also with the fact that a weapon, even if it is found at the assault site, is used to injure or kill another. And there is no basis for inferring that the legislature intended to preclude a brick or a 2" x 4" from being a weapon merely because they were *185 designed for the benign purpose of construction.[1]
By enacting section 775.087, the legislature has recognized that felonies which can be committed without weapons become much more dangerous to the victims if weapons are involved and has provided that such felonies involving weapons carry more serious consequences. This statute recognizes, for example, that fights may occur and that, although serious bodily injury or even death might occur if only hands or feet are used in the assault, serious injury or death is far more likely to occur if a weapon is used. Therefore, I view the legislative policy more broadly than the majority. I think it is to make the offense more serious if any object, other than the body of the offender, is deliberately and intentionally used to intimidate, injure or kill the victim.
In this vein, why would the legislature condemn the use of a brick to slam into one's head and yet not be concerned with the slamming of one's head into a brick? And why should it matter if the brick is carefully placed under the victim's head by the assailant during the assault or is part of a paved street that the assailant conveniently finds beneath the head of his victim? If the pavement is intentionally "used" by the assailant to cause injury or death to the victim, the legislature intended, in my opinion, to punish the offense more seriously than had the assailant merely hit the victim with his fist. The offense would be less serious even if the victim of the blow fell to the ground and hit his head on the pavement causing death because then the injury caused by the pavement would be happenstance and not because the assailant intentionally "used" the pavement for that purpose.
Assume two unarmed thugs invade a business in north Florida being warmed by a potbellied stove. After the clerk endures the threats and even the infliction of a physical beating and yet refuses to divulge the combination to the safe, he or she is dragged over to the stove. The thugs open the door of the stove and threaten to or actually hold the clerk's hand in the fire until the combination is revealed. I suggest that this conduct would support a conviction for robbery "with a firearm or other deadly weapon"  a first degree felony punishable by life. The majority opinion would support a conviction only of robbery  a second degree felony.[2]
This myopic view of legislative intent will make it possible, by carefully choosing one's object of intimidation and injury, to minimize the risk (if such risk exists under present law and practice) of meaningful incarceration. It will encourage the discriminating thug to carry only those objects determined not to be weapons by the doctrine of ejusdem generis: "Yield, lady, or I'll stick your hand in this bag of rattlesnakes I've carried into your bedroom." Or to use only those innocuous objects not designed to injure or kill found in every household. "Tell me where your jewels are, madam, or I'll hold your head under this eighteen inches of water I've drawn in your bath" or "I'll place your hand in this boiling water I've prepared in your tea kettle."
A broader legislative policy is far more consistent with the definition of "weapon" approved by the supreme court as a part of the jury instruction given to the jury in our case:
A "weapon" is legally defined to mean any object that could be used to cause death or great bodily harm.
*186 This definition does not distinguish between the stone hitting the pitcher and the pitcher hitting the stone.[3] Nor does it distinguish between a large stationary object (nor any innocuous object) found at the assault site and something designed for "the purpose to inflict death and serious bodily injury" that can be concealed on one's body and carried to the site by the assailant.
This broader legislative policy is also consistent with that in other states. State v. Reed, 101 Or. App. 277, 790 P.2d 551 (1990) (concrete sidewalk constituted dangerous weapon when defendant repeatedly struck girlfriend's head against it); People v. Galvin, 65 N.Y.2d 761, 492 N.Y.S.2d 25, 481 N.E.2d 565 (1985) (pavement of sidewalk was dangerous weapon when defendant, while atop victim, pounded victim's head against pavement).[4]
The jury in our case decided, pursuant to the instruction given them and consistent with this broader (and, I urge, more reasonable) legislative policy concerning weapons, that Houck intentionally "used" the hard surface presented by the parking lot to cause the death of his victim. The jury intended that he be punished more severely. Is the jury guilty of applying common sense rather than the law to the facts of this case? I would affirm.
GOSHORN, PETERSON and DIAMANTIS, JJ., concur.
DIAMANTIS, Judge, dissenting.
I concur in the well-reasoned dissent of Chief Judge Harris, and I can add only a few comments to his cogent opinion.
Contrary to the majority's assertion that this issue was a matter of law for the trial court to determine, Judge Cowart, writing for this court, has explained that "whether or not an object is a deadly weapon is a question of fact to be determined by the jury from the evidence, taking into consideration its size, shape and material and the manner in which it was used or was capable of being used." Duba v. State, 446 So.2d 1167, 1169 (Fla. 5th DCA 1984). In this case, the jury, upon being properly instructed and applying its collective common sense, determined that Houck used the pavement as a weapon when he straddled his much smaller victim and repeatedly banged the side of the victim's head against the pavement. Houck's use of the pavement in this manner caused the victim's serious bodily injury and, ultimately, his death.
In my view, the jury's common sense was preferable in this case to the majority's application of the doctrine of ejusdem generis to limit the objects which legally may be considered weapons. While this doctrine is a valid aid in construing the meaning of statutory language, it should not be applied to confine a statute's operation within narrower limits than the legislature intended. Karl N. Llewellyn, Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are to Be Construed, 3 Vand. *187 L.Rev. 395, 405 (1950) (citing Texas v. United States, 292 U.S. 522, 54 S.Ct. 819, 78 L.Ed. 1402 (1934); Grosjean v. American Paint Works, 160 So. 449 (La. Ct. App. 1935); Black, Construction and Interpretation of Laws § 71 (2d ed. 1911); Sutherland, Statutory Construction §§ 437-41 (2d ed. 1904); 59 C.J. Statutes § 581 (1932); 25 R.C.L. Statutes § 240 (1919)). Even in Edwards v. United States, 583 A.2d 661 (D.C. 1990), a case upon which the majority relies, the court noted that "the rule of ejusdem generis is only a constructionary crutch and not a judicial ukase in the ascertainment of legislative intention." Edwards, 583 A.2d at 664 (quoting State v. Small, 99 N.H. 349, 111 A.2d 201, 202 (1955); also citing Standard Oil Co. v. Anderson, 212 U.S. 215, 220, 29 S.Ct. 252, 53 L.Ed. 480 (1909)). As Chief Judge Harris aptly points out in his dissent, the legislature's disjunctive use of the terms "carry" and "use" in the reclassification statute, section 775.087(1), Florida Statutes (1991), indicates a broader view of the term "weapon" than that taken by the majority.
I submit that construing the term "use of a dangerous weapon" to include the pavement under the facts of this case will not interfere with the right of a person to pave his driveway, but it might prevent a person from repeatedly banging his neighbor's head on the pavement for the purpose of either seriously injuring or killing the neighbor.
GOSHORN and PETERSON, JJ., concur.
NOTES
[1] Section 775.087(1) states:

Unless otherwise provided by law, whenever a person is charged with a felony, except a felony in which the use of a weapon or firearm is an essential element, and during the commission of such felony the defendant carries, displays, uses, threatens, or attempts to use any weapon or firearm, or during the commission of such felony the defendant commits an aggravated battery, the felony for which this person is charged shall be reclassified as follows:
(b) In the case of a felony of the second degree, to a felony of the first degree... .
[2] The dissent by Judge Diamantis asserts that our holding in this regard is in conflict with Judge Cowart's holding in Duba v. State, 446 So.2d 1167 (Fla. 5th DCA 1984), that the deadliness of a weapon was a factual issue for the jury. There was no dispute in that case that a pistol was a weapon and the distinction is readily apparent.
[1] I agree with the majority that the definition of "weapon" contained in section 790.001(13), Florida Statutes (1991), is inapplicable. First, by its terms, Chapter 790 limits its definition to being only "for the purpose of this chapter." Second, the purpose of chapter 790 is primarily to regulate the carrying of concealed weapons and the registration, sale and manufacture of weapons and firearms.
[2] The court held in Logan v. United States, 460 A.2d 34, 36 (D.C.App., 1983):

After unsuccessfully attempting to burn Osborne's face, appellant pulled her into the living room and began to beat her. He then stacked some telephone books against the wall, ignited a paper bag, and set the books on fire. Appellant attempted to shove Osborne into these flames. A jury could reasonably find that appellant, through conduct separate and distinct from his actions in the kitchen, intended in the living room to harm Osborne with a dangerous weapon  namely fire. See Josey v. United States, 77 U.S.App.D.C. 321, 323, 135 F.2d 809, 811 (1943) (dangerous weapon defined as one "likely to produce death or great bodily injury").
[3] As Cervantes said in Don Quixote in either event "it will be bad for the pitcher."
[4] The cases cited by the majority to support its conclusion are inapposite. In Legendre, the court held that "striking the victim a blow which would cause him to fall upon the concrete and sustain injuries" is not the "use" of a "weapon." Legendre at 571. I agree. In Edwards, it is the enhancement statute itself that limits the term "dangerous or deadly weapon" by adding the provision "(including a sawed-off shotgun, shotgun, machinegun, rifle, dirk, bowie knife, butcher knife, switchblade knife, razor, blackjack, billie, or metallic or other false knuckles)." Unlike our case, the doctrine of ejusdem generis was properly used to exclude anything other than easily portable, offensive weapons designed to injure from applying to the enhancement statute. This is the same court that decided Logan (cited in footnote 1) some seven years earlier. Edwards distinguishes Logan by stating that the telephone books used to create the fire were portable. However, Edwards overlooks the fact that Logan held that the fire, not the telephone books, was the dangerous weapon  and the fire was not portable. It is probable that the decision in Edwards would have been different had not the doctrine of ejusdem generis limited the application of its enhancement statute because its definition of dangerous weapon given in its jury instructions is very similar to ours: "a `deadly or dangerous weapon' is one which is likely to produce death or great bodily injury." Criminal Jury Instructions for the District of Columbia, No. 4.81 (3d ed. 1978). See Monroe v. United States, 598 A.2d 439 (D.C.App. 1991). In any event, our enhancement statute is not so narrowly drawn.