747 So.2d 997 (1999)
Lennard Lapoint JENKINS, Appellant,
v.
STATE of Florida, Appellee.
No. 99-341.
District Court of Appeal of Florida, Fifth District.
December 3, 1999.
Rehearing Denied January 14, 2000.
James B. Gibson, Public Defender, and S.C. Van Voorhees, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Wesley Heidt, Assistant Attorney General, Daytona Beach, for Appellee.
GRIFFIN, J.
Lennard L. Jenkins ["Jenkins"] appeals his judgment and sentence for armed robbery with a weapon.[1] We affirm.
On November 22, 1997, Jenkins, seated in the passenger seat of an automobile driven by his female co-defendant, snatched a woman's purse in the Best Buy parking lot in Daytona Beach. The vehicle bumped the victim's hip and Jenkins reached through the open window grabbing the purse strap, thereby yanking the victim to the ground and dragging her along the pavement until she relinquished her hold on her purse. The victim sustained *998 a fractured upper arm, contusions on her knees and elbow and asphalt burns.
After grabbing the purse, the car drove off, pursued on foot by members of the victim's family and other "good Samaritans." The police quickly apprehended the couple and Jenkins confessed to snatching the purse. The State charged Jenkins with: (1) principal to armed robbery with a weapon, to wit: an automobile and (2) principal to aggravated battery.
The court conducted a jury trial on November 12, 1998. At trial, the victim testified that the force of the automobile caused her injuries:
A. I was no more than two cars' length away, two cars from where I just parked my car. All of a sudden I got hit in my hip. The first thing I said, "This guy just hit me in the hip with this car." And the next thing I knew the purse, the strap of my purse, was being tugged off from my shoulder and I immediately grabbed the bulk of my pocketbook with my left arm to hold it close to me. He kept pulling it towards me, the purse kept getting tugged ahead.
* * *
Q. Now, when you say this arm came out and grabbed your hand, the purse at that point was in the process of being tugged at the same time?
A. Yes.
Q. So what happens after this arm grabs your hand?
A. The car began to accelerate and I was still with my right hand trying to hold the strap that I was clinging to. As the car accelerated I started to lose ground, and that's when I went down. I fell. I was dragged along the asphalt. And the pocketbook was gone. I actually saw the strap had been broken in the air. It was gone.
She also testified that she was dragged by the automobile until she surrendered the purse:
Q. Once you fell to the ground, you said you were dragged. Do you know how far you were dragged?
A. I don't honestly remember how long I was being dragged, but it seemed like forever at that time. But once I felt the actual burning and the ripping of my skin, I just gave up.
On cross-examination, the victim reiterated:
Q. Now, as I understand it, when you first become [sic] aware there was a problem, you were bumped on the hip by the car; is that correct?
A. That's correct.
Q. Did this knock you out?
A. I wasn't just bumped, I was hit.
The victim testified that she sustained permanent scarring and underwent numerous physical therapy sessions.
Jenkins moved for judgment of acquittal at the close of the State's case and renewed it at the close of his own arguing that, as a matter of law, the car was not used as a weapon. The court denied both motions. The jury returned a verdict of guilty as charged on all counts. Jenkins filed a post-verdict motion for judgment of acquittal and for new trial. The trial court denied the motions.
On appeal, Jenkins contends that the trial court erroneously denied his motion for judgment of acquittal and for new trial. According to Jenkins: "[T]he central issue on appeal, is whether, in the specific circumstances of this case, the car was to be classed as a weapon so as to enhance a strong-arm robbery to an armed robbery." We agree with the lower court that the evidence was sufficient for a jury to find that the automobile was used as a weapon. The notion that the evidence at trial does no more than show that the vehicle was used as transportation to and from the site of the purse snatching ignores the victim's description of events. At the very least, it is a jury question whether the automobile was used as a weapon.
*999 The dissent's discussion of Jackson v. State, 662 So.2d 1369 (Fla. 1st DCA 1995), is not without interest and if we were faced with deciding whether a car could be "carried" as a weapon within the meaning of Section 812.13(2)(b), we might or might not embrace the First District's view. The issue plainly has not been raised as an issue on appeal, however, and we do not reach it.
AFFIRMED.
DAUKSCH, J., concurs.
HARRIS, J., dissents, with opinion.
HARRIS, J., dissenting.
I respectfully dissent.
In this parking lot purse snatching incident which went awry, Jenkins was convicted of armed robbery with a weapon (automobile) and aggravated battery. He was sentenced to twenty years in prison on each count. Jenkins appeals only the finding of the enhancer (automobile) which increased the robbery count from a second degree felony to a first degree felony.
The issue in this case is whether an automobile can ever be a weapon under the provisions of section 812.13(2)(b), Florida Statutes, and, if so, whether the State proved that the automobile was a weapon based on the "purpose" of its use in this purse snatching incident. The above-cited statute enhances a robbery "if in the course of committing the robbery the offender carried a weapon."
The victim herein testified that while she was walking in the parking lot of Best Buy with her purse over her shoulder: "[A]ll of a sudden I got hit in my hip. The first thing I said, `this guy just hit me in the hip with his car.' And the next thing I knew the purse, the strap of my purse, was being tugged off my shoulder and I immediately grabbed the bulk of my pocketbook with my left arm to hold it close to me. He kept pulling it towards me, the purse getting tugged ahead." The victim was then specifically asked: "Do you see a car or do you see hands on you or anything like that?" She responded: "What I saw was a black arm reach out of the car and pull my left hand away from where I was holding the bulk of my purse towards in. That's what I saw." The victim ultimately tripped and fell to the ground as the automobile accelerated as both Jenkins, a passenger in the vehicle, and the victim held on to the purse. There is absolutely no evidence that the female driver planned to "bump" the victim or intended to drag the purse from the victim or that she was aware that Jenkins did not have sole possession of the purse at the time she accelerated out of the parking lot.
First, does the robbery statute cited above contemplate that an automobile is a weapon? The majority concludes that this issue is not before us because defense counsel argued below and before this court that there was insufficient proof that the automobile was used for the purpose of injuring the victim hence it was not a weapon rather than that an automobile cannot legally be a weapon under this statute. Since I do not believe that the argument of counsel, or the lack thereof, can change the meaning of a statute, I respectfully dissent.
In theory at least, any particular issue based on given facts has a correct answera = b + c.[1] It should be our aspirational goal to find this answer. This answer should not vary based on the age, gender, race, or religion of the litigants. Nor should it change because of the argument made by counsel. Some argue that it is unfair to a trial court to reverse, even on a preserved issue,[2] if the particular *1000 reason relied on for reversal was not argued below. I believe our role on appeal is to be a court of justice charged with finding "the law" and not a legal clinic committed to salve the wounded feelings of a trial court which is reversed because it was misled by an inappropriate argument or no argument at all.[3] We should seek "the law" based on the issue and the record and not be content to accept the better proposal submitted by counsel.
Suppose a trial judge, based on twenty years of legal practice and fifteen years on the bench, had disregarded the argument made below and determined on his own, because of our decision in Houck v. State, 634 So.2d 180 (Fla. 5th DCA 1994), approved, 652 So.2d 359 (Fla.1995), that the automobile simply could not be a weapon under section 812.13. Would we reverse him for exceeding his authority? If the trial judge or this court is perceptive enough to find that law even in the absence of appropriate argument, we should not hesitate to do so. This is particularly true when the construction of a statute is involved. We should seek to determine what the legislature meant and not accept a stipulation by counsel that it meant something else. Counsel cannot stipulate, for example, that the legislature intended two instead of four years for a statute of limitations. Nor can counsel waive by non-argument the legislative requirement that a weapon as contemplated by the robbery statute "be carried." A defendant cannot even plead to an offense until the State has proffered proof of each element of the crime. See Williams v. State, 534 So.2d 929, 930 (Fla. 4th DCA 1988). Can he preclude a proper judicial statutory interpretation at trial, an interpretation which would make the difference between a second degree felony and a first degree felony, by non-argument? We have learned by experience that whether something can be a weapon under a particular statute is a question of law to be determined by the court. See Houck v. State, 634 So.2d 180 (Fla. 5th DCA 1994). The judge's responsibility to properly interpret a statute is not lessened by the lack of argument by counsel.
In Jackson, an automobile was found to be a weapon when it was used to "run down the victim after which the victim's wallet was taken as he lay at the side of the road, seriously injured." Thus, in Jackson, the vehicle, purposely used to disable the victim, was held to be a weapon. Jackson, even though we may find the result desirable, should cause us some concern because it appears to be in conflict with our opinion in Houck, in which we held in a case involving the definition of a weapon that "penal statutes are to be strictly construed and any ambiguity therein is to be resolved in scope and application in favor of the accused." Jackson, on the other hand, held that regardless of the "strict letter of the statute," the court should look for legislative intent that would not lead to "an absurd or unreasonable result."[4] In this spirit, the Jackson court interpreted the term "offender carried a weapon" as including the concept of *1001 the offender being carried by a weapon. If the offender "was wearing" the automobile while committing the offense then, according to Jackson, he "possessed" it and it was the fact that the offender possessed a weapon, not that he carried one, which was really of legislative concern. This liberal interpretation of the statute ignores the fact that the legislature may have chosen its terminology with care in order to limit the term "weapon" to the statutory definition contained in Chapter 790, Florida Statutes: "any dirk, metallic knuckles, slingshot, billie, tear gas gun, chemical weapon or destructive device, or other deadly weapon except a firearm[5] or a common pocket knife" or, if not so limited, at least limited to weapons of similar characteristics. All of these items are capable of being carried, and if firearms (covered by a different section of the statute) are added to the mix, the legislature has by this provision banned all but the most exotic possibilitiesplanes, trains, and automobilesas weapons. For example, a kitchen sink could qualify as a weapon if it was detached from its plumbing and carried during the robbery with the purpose to threaten or harm the victim. Houck interpreted an enhancer provision which provided that a weapon could be determined from its use and held that any instrument "commonly recognized as having the purpose to inflict death or serious bodily injury upon another person" expanded the statutory list of weapons available for enhancement under that statute. Houck v. State, 634 So.2d 180 (Fla. 5th DCA 1994). In our case, however, the legislature limited weapons to those subject to being carried. Because this interpretation is not per se unreasonable, the defendant is statutorily entitled to it.
Even applying the more liberal interpretation of Jackson, there was no proof in this case that the automobile was used for the purpose of inflicting injury upon the victim. The evidence suggests that Jenkins and his companion intended to stealthily pull up beside the victim, snatch her purse, and flee out of the parking lot. Indeed, the victim did not even suspect the automobile's presence until she felt a bump and saw Jenkins' arm reach toward her. The car must have been stopped or at most going very slowly for Jenkins to be able to reach out and attempt to disengage the victim's hand from her purse. After Jenkins had grabbed the purse, the driver, who as far as the record reflects was totally unaware that the victim was holding onto her purse strap, accelerated. Although the acceleration may have caused the victim to fall and loosen her grip on the purse, it was not proved to be the purpose of the use of the automobile. The "circumstances" of the victim's fall are not inconsistent with and do not disprove the defendant's theory of the case that although the purpose of the car was to flee the scene, its purpose was not to cause injury to the victim.
Had the victim not fallen and been injured but merely lost her purse, would the automobile be considered a "weapon" used in the commission of this purse snatching? Even though the victim held onto her purse until she fell and broke her arm (Jenkins was also convicted of aggravated battery based on this injury), the fact that the victim fell does not convert the automobile used only for the purpose of fleeing the scene into a weapon having the purpose of inflicting death or serious bodily injury unless such purpose is proved. Suppose Jenkins had used a bicycle in the same fashion and with the same results; would the bicycle be a weapon? Suppose he had used roller skates; would the skates be a weapon? Suppose he had used traction shoes....
Some objects, such as dirks, firearms, and explosives, are weapons by definition. Others, such as rocks, automobiles, and *1002 kitchen sinks (at least those that can be hoisted and hurled into a person), become weapons only if used for the purpose of injuring or threatening another. The automobile in our case was not used for the purpose of injuring or threatening the victim. The victim conceded that the bump she felt, whether from the automobile or Jenkins, caused her no injury. Rather it was used to facilitate a "grab and run" purse snatching. The victim's injury, so far as the record shows, was unplanned and unintended. This is not what the legislature intended as an enhancer when it decided that a robbery with a weapon should be punished more severely than a mere robbery.
If there was any proof that the automobile in this case was intentionally driven into the victim to injure or intimidate her into turning over her purse, I would agree with the majority that, under Jackson, it constituted a weapon. However, I do not believe that the mere use of an automobile to assist in the commission of a crime, without showing a purpose to injure or intimidate the victim by the use of the automobile, makes that automobile a weapon even under the Jackson interpretation of the statute.
NOTES
[1] § 812.13(2)(b), Fla. Stat. (1997).
[1] I recognize Holmes'"experience" argument to the contrary.
[2] The issue on appeal in this case was the following: "The court erred in denying the defendant's motions for judgment of acquittal and for a new trial on the armed robbery count because the car used in the offense was not legally to be considered a weapon." Hence, the issue was properly raised. Does the answer to this issue really change because appellant, in deference to the First District, did not argue that the statute simply did not make a vehicle a weapon under the robbery statute?
[3] In this case, there is no reason for the trial court to be embarrassed in any event. In the absence of a contrary ruling by this court, the trial court was required to follow Jackson. It did so.
[4] The absurdity which concerned the Jackson court is that a strict reading of the statute means that one's robbery sentence can be enhanced if he carries brass knuckles during the offense but cannot be enhanced if he runs over his victim with a vehicle. Such is the problem of permitting the legislature to enact laws. Since the legislature could have eliminated all enhancers, it can pick and choose such enhancers as it deems most appropriate. In this instance, it seems to have concentrated on those weapons most commonly associated with robberyhand held weaponsand has left it to the State to prosecute one who uses a vehicle to intentionally injure another under the attempted murder or aggravated battery statutes.
[5] In this case, the automobile was alleged merely to be a weapon under section 812.13(2)(b). Had the offender carried a firearm then under section 812.13(2)(a) an even greater enhancer would have applied.