# Supreme Court of Florida

_____

No. SC17-1952
_____

**ADAM LLOYD SHEPARD,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

November 1, 2018

LABARGA, J.

This case is before the Court for review of the decision of the First District Court of Appeal in *Shepard v. State*, 227 So. 3d 746 (Fla. 1st DCA 2017), which certified conflict with the decision of the Second District Court of Appeal in *Gonzalez v. State*, 197 So. 3d 84 (Fla. 2d DCA 2016), on the issue of whether an automobile can be considered a "weapon" for purposes of enhancing a defendant's sentence to a higher degree under Florida's reclassification statute, section 775.087(1), Florida Statutes (2011). The First District's decision also expressly and directly conflicts with this Court's decision in *State v. Houck*, 652 So. 2d 359 (Fla. 1995). We have jurisdiction. *See* art. V, § 3(b)(3)-(4), Fla. Const. For the

reasons explained below, we approve the conclusion of the First District that an automobile can be a weapon for purposes of the reclassification statute and disapprove of *Gonzalez* to the extent it holds otherwise.[1]

## FACTS AND PROCEDURAL HISTORY

Adam Lloyd Shepard was convicted of (1) manslaughter with a weapon, where the weapon supporting the charge was an automobile, and (2) leaving the scene of a crash involving death. *Shepard*, 227 So. 3d at 747. The district court described the relevant facts:

> On January 22, 2011, Appellant was drinking and watching a basketball game at a bar with the victim. Appellant and the victim got into a tussle at the bar, after which Appellant was escorted out of the bar by staff. The victim, who was still at the bar, began receiving phone calls from Appellant and ultimately the victim answered one phone call before leaving the bar.
>
> A witness at trial, who had been at the bar that evening and had been invited by the victim to his apartment to meet his girlfriend, testified that she saw a white vehicle (later confirmed to be Appellant's) parked in the rear of a shopping center across the street from the entrance of the victim's apartment complex. The witness said that the white car flashed its lights. The victim pulled into the parking lot, exited his car, and rushed toward the white automobile while pulling off his jacket. The white automobile advanced towards the victim and struck him. Appellant left the parking lot and was apprehended two weeks later in Chicago. The victim sustained head injuries and ultimately succumbed to those injuries the following day.
>
> A jury found Appellant guilty of one count of manslaughter with a weapon and one count of leaving the scene of a crash involving a death. . . . Appellant was sentenced to thirty years on the

---

1. We also reject without comment Shepard's claim that his vehicle was unlawfully seized.

manslaughter count and fifteen years on the leaving the scene of a crash count.

*Id.* at 747-48.

On appeal, Shepard argued that the trial court improperly allowed his manslaughter conviction to be reclassified from a second-degree felony to a first-degree felony pursuant to section 775.087(1) for using a weapon, where the "weapon" was an automobile. The district court disagreed and held that "an automobile, when used in the manner [Shepard] used it, constitutes a weapon in the common and ordinary meaning of the word." *Id.* at 748. The district court relied in part upon the definition of "weapon" adopted by this Court in *Houck*: "[1.] [a]n instrument of attack or defense in combat, as a gun or sword . . . [or] [2.] [a] means used to defend against or defeat another." *Id.* (quoting *Houck*, 652 So. 2d at 360) (some alterations in original). The district court concluded "an automobile falls within the second definition of a weapon as a 'means *used* to defend against or defeat another.' " *Id.* The district court certified conflict with the decision of the Second District in *Gonzalez*, which held an automobile may not be considered a weapon under section 775.087(1), because it is not commonly understood to be an instrument for combat. *Id.*

This review follows.

## ANALYSIS

### Standard of Review

The question before the Court is whether an automobile may be considered a "weapon" under section 775.087(1), Florida Statutes (2011), which reclassifies a felony to a higher degree when the defendant "carries, displays, uses, threatens to use, or attempts to use any weapon or firearm" during the commission of the felony. The standard of review is de novo. *See Williams v. State*, 186 So. 3d 989, 991 (Fla. 2016) ("Judicial interpretations of statutes are pure questions of law subject to de novo review." (quoting *Johnson v. State*, 78 So. 3d 1305, 1310 (Fla. 2012))). Where the plain language of a statute is unambiguous and conveys a clear meaning, the statute must be given its obvious meaning. *Id*. Further, when construing a statute, our "task is to ascertain the meaning of the phrases and words used in a provision, not to substitute [the Court's] judgment for that of the Legislature." *Sch. Bd. of Palm Beach Cty. v. Survivors Charter Sch., Inc.*, 3 So. 3d 1220, 1228 (Fla. 2009).

### Defining "Weapon"

Florida's reclassification statute provides:

Unless otherwise provided by law, whenever a person is charged with a felony, except a felony in which the use of a weapon or firearm is an essential element, and during the commission of such felony the defendant *carries, displays, uses, threatens to use, or attempts to use any weapon* or firearm, or during the commission of such felony the

- 4 -

defendant commits an aggravated battery, the felony for which the person is charged shall be reclassified as follows:

> (a) In the case of a felony of the first degree, to a life felony.
> (b) In the case of a felony of the second degree, to a felony of the first degree.
> (c) In the case of a felony of the third degree, to a felony of the second degree.

§ 775.087(1), Fla. Stat. (emphasis added). The statute does not define "weapon." However, this Court defined the term in *Houck*, where the defendant was convicted of manslaughter with a weapon after repeatedly beating the victim's head against pavement. 652 So. 2d at 359. The defendant's conviction was reclassified from a second-degree felony to a first-degree felony under section 775.087(1) based on the use of the pavement as a weapon. *Id.* On review, this Court concluded that pavement does not qualify as a weapon for purposes of the reclassification statute. *Id.* at 360.

In reaching its decision, the Court first determined that whether an object is a weapon is "a question for the court to determine as a matter of law," reasoning:

> The failure of the statute to broadly define the term "weapon" cannot be cured by jury speculation. As Houck contends, the panel opinion [upholding the defendant's conviction] would open a veritable "Pandora's Box" and allow a creative prosecutor, in conjunction with the jury, to turn almost any intentional injury into one caused by a weapon. For example, would the ground be transformed into a weapon merely because it was the point of impact for a person pushed from a cliff or high building? Would the water become a weapon if the victim was pushed overboard from an ocean liner?

- 5 -

*Id.* (quoting *Houck v. State*, 634 So. 2d 180, 182 (Fla. 5th DCA 1994)). This Court then determined that "the obvious legislative intent reflected by section 775.087 is to provide harsher punishment for, and hopefully deter, those persons who use instruments commonly recognized as having the purpose to inflict death and serious bodily injury upon other persons." 652 So. 2d at 360 (quoting *Houck*, 634 So. 2d at 184). To give effect to this intent, the Court defined "weapon" as an "instrument of attack or defense in combat," and concluded that pavement is not a weapon because it is "not commonly understood to be an instrument for combat." *Id.* In other words, *Houck* held that under section 775.087(1), the term "weapon" includes only those instruments commonly recognized as weapons.

However, the narrow definition of "weapon" announced in *Houck* is contrary to the usual meaning of the word. It is well established that "where a statute does not specifically define words of common usage, such words are construed in their plain and ordinary sense." *State v. Brake*, 796 So. 2d 522, 528 (Fla. 2001) (citing *State v. Mitro*, 700 So. 2d 643, 645 (Fla. 1997)). Accordingly, where the Court is tasked with construing a statute, "our first (and often only) step . . . is to ask what the Legislature actually said in the statute, based upon the common meaning of the words used." *Schoeff v. R.J. Reynolds Tobacco Co.*, 232 So. 3d 294, 313 (Fla. 2017) (Lawson, J., concurring in part and dissenting in part) (citation omitted) (citing *Brake*, 796 So. 2d at 528). Here, the plain and ordinary

meaning of the word "weapon" includes not only those objects designed with the purpose of injuring or killing another, such as guns, clubs, or swords, but also any object used with the intent to cause harm. This is evident in dictionary definitions, which consistently define "weapon" to include objects used as weapons, even if they were not designed for that purpose. For example, *Black's Law Dictionary* defines "weapon" as "[a]n instrument *used or designed to be used* to injure or kill someone." *Black's Law Dictionary* 1827 (10th ed. 2014) (emphasis added). *Webster's Third New International Dictionary* explains that the word "weapon" can apply "to *anything used* or usable in injuring, destroying, or defeating an enemy or opponent." *Webster's Third New International Dictionary* 2589 (1993) (emphasis added). Even the dictionary cited by *Houck* defined "weapon" as including "[a] means used to defend against or defeat another." 652 So. 2d at 360 (quoting *American Heritage College Dictionary* 1529 (3d ed. 1993)).

These definitions are consistent with the way the Court has historically defined "weapon." As early as 1884, this Court recognized that any object can be a weapon if it is used as one. *See Blige v. State*, 20 Fla. 742, 751 (1884) (concluding an iron weight may constitute a deadly weapon based on the way it is used, and explaining "[a] weapon may be deadly although not especially designated for offensive and defensive purposes, or the destruction of life, or the infliction of injury" (internal quotation marks omitted)). In 1926, this Court

defined "weapon" as "[a]n instrument of offensive or defensive combat; something to fight with; *anything used* or designed to be used in destroying, defeating, or injuring an enemy, as a gun, a sword, a shield, etc." *Williamson v. State*, 111 So. 124, 125 (Fla. 1926) (quoting *Webster's New International Dictionary* (1910)). Based on this definition, the Court concluded that, "[a]s an automobile is a thing which may be used in destroying or injuring an enemy, it would come within the dictionary definition of a weapon, although it was not designed or constructed for that purpose." *Id*. at 125. Even after the 1995 decision in *Houck*, we have explained that "weapon" includes objects used as weapons, even if not designed for such a purpose. *See Dale v. State*, 703 So. 2d 1045, 1046-47 (Fla. 1997) (holding that the standard jury instruction defining weapon as "*any object* that could be used to cause death or inflict serious bodily harm" was "a correct statement of law" (emphasis added) (quoting Fla. Std. Jury Instr. (Crim.) 156(a) (1981))).[2]

---

2. Other courts have similarly defined "weapon" to include objects used as weapons, including automobiles. *See, e.g.*, *United States v. Barnes*, 569 F.2d 862, 863 (5th Cir. 1978) ("[A]lmost any implement, even a belt buckle, could be intended or used as a weapon."); *Tatum v. United States*, 110 F.2d 555, 555-56 (D.C. Cir. 1940) (" 'Weapon' includes 'any instrument of offense; anything used, or designed to be used, in attacking an enemy . . . .' An automobile, a rolled-up kit of tools, or a pin, is a 'weapon' when it is used as one." (footnotes omitted)); *Wright v. State*, 528 A.2d 498, 500 (Md. Ct. Spec. App. 1987) ("A weapon . . . has been broadly defined as anything used or designed to be used in destroying, defeating, or injuring an enemy or as an instrument of offensive or defensive combat."); *Coles v. Commonwealth*, 621 S.E.2d 109, 111 (Va. 2005) ("A motor

Further, this Court has repeatedly used the word "weapon" to describe ordinary objects that were used as weapons. *See, e.g.*, *Guardado v. State*, 965 So. 2d 108, 111 (Fla. 2007) (kitchen knife and breaker bar); *Buzia v. State*, 926 So. 2d 1203, 1207 (Fla. 2006) (ax); *Nelson v. State*, 850 So. 2d 514 (Fla. 2003) (the contents of a fire extinguisher and a tire iron); *Sireci v. Moore*, 825 So. 2d 882, 886 (Fla. 2002) (tire iron); *Lawrence v. State*, 698 So. 2d 1219, 1221 (Fla. 1987) (metal pipe, baseball bat, and mop); *Craig v. State*, 168 So. 2d 747, 748 (Fla. 1964) (screwdriver); *Nelson v. State*, 97 So. 2d 250, 251 (Fla. 1957) (ice pick); *Brown v. State*, 61 So. 2d 640, 641 (Fla. 1952) (hammer); *Brooks v. State*, 156 So. 23, 23 (Fla. 1934) (sticks and clubs); *Gray v. State*, 33 So. 295 (Fla. 1902) (a "large piece of scantling").

Accordingly, we recede from the holding in *Houck* that an object must be "commonly understood to be an instrument for combat" in order to constitute a weapon under section 775.087(1), and conclude that any object used or intended to be used to inflict harm on another constitutes a weapon within the meaning of the statute. We also recede from our statement in *Houck* that "it is for the court to determine whether what is used in the commission of a felony is a weapon within the meaning of the statute." *Houck*, 652 So. 2d at 360. Rather, whether an object

vehicle, wrongfully used, can be a weapon as deadly as a gun or a knife." (quoting *Essex v. Commonwealth*, 322 S.E.2d 216, 220 (Va. 1984))).

is being used as a weapon during the commission of a felony would typically be a question of fact for the jury. *Cf. Miller v. State*, 918 So. 2d 415, 417 (Fla. 2d DCA 2006) ("[W]hether a motor vehicle is used or threatened to be used in a way that makes it a deadly weapon is typically a question resolved by a jury." (citing *Williamson*, 111 So. at 126)).

In receding from the reasoning of *Houck* on these points, "we are mindful of the importance of the doctrine of *stare decisis*." *State v. Gray*, 654 So. 2d 552, 554 (Fla. 1995).

> *Stare decisis* provides stability to the law and to the society governed by that law. Yet *stare decisis* does not command blind allegiance to precedent. "Perpetrating an error in legal thinking under the guise of stare decisis serves no one well and only undermines the integrity and credibility of the court."

*Id.* (citation omitted) (quoting *Smith v. Dep't of Ins.*, 507 So. 2d 1080, 1096 (Fla. 1987) (Ehrlich, J., concurring in part, dissenting in part)).

## CONCLUSION

In conclusion, we hold that an automobile is a weapon under section 775.087(1) if it is used to inflict harm on another. Further, it is a question of fact for the jury to determine whether an automobile or other object was used as a weapon by the defendant. Accordingly, we approve the conclusion of the First District that an automobile can be a weapon for purposes of the reclassification statute and disapprove of *Gonzalez* to the extent it holds otherwise.

It is so ordered.

CANADY, C.J., and LEWIS, QUINCE, POLSTON, and LAWSON, JJ., concur.
PARIENTE, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

PARIENTE, J., dissenting.

I dissent for two reasons. First, I dissent because the majority is receding from this Court's longstanding precedent in *State v. Houck*, 652 So. 2d 359 (Fla. 1995), regarding the definition of "weapon" for purposes of the reclassification statute when that task should be left to the Legislature. Second, I dissent because in receding from *Houck,* the majority does not apply a clear and consistent definition of "weapon," which, for purposes of the reclassification statute, should include an "intent" element.

Construing the term "weapon" narrowly, and in favor of the accused, I would conclude that there should be an explicit finding that the defendant intended to use the object to inflict harm before a felony can be reclassified. Failure to construe the term in this manner will lead to reclassification to a higher degree of felony in any and every situation where any object is used to inflict harm on another.

While this may not be what the majority intended, the majority's opinion inconsistently defines what constitutes a "weapon" under the reclassification

- 11 -

statute. First, the majority states that a "weapon" includes "any object used with the intent to cause harm." Majority op. at 7. In keeping with this definition, the majority concludes that a "weapon" as that term is used in the reclassification statute is "any object used or intended to be used to inflict harm on another." Majority op. at 9. The majority then concludes by stating that if the object "is used to inflict harm on another," the felony offense is subject to reclassification and that this finding should be made by the jury. Majority op. at 10. However, if there is no requirement of intent, then the jury is essentially not making any additional finding than what is required for involuntary manslaughter.

It is this all-encompassing definition of "weapon" that would subject a defendant who uses *any* object to inflict harm on a person during the commission of a felony to a higher penalty under the reclassification statute, without any factual finding that the defendant intended to use the object to inflict harm. In other words, every felony involving harm to another through the means of some object, no matter how innocuous, would be subject to reclassification regardless of the defendant's state of mind. I strongly disagree with this overly broad interpretation of the reclassification statute, which divorces the statute from the Legislature's intended purpose.

Even if I agreed with the majority that our opinion in *Houck* warrants reconsideration, I would utilize well-established principles of statutory

- 12 -

construction, such as *ejusdem generis*, *in pari materia*, and the rule of lenity, in conjunction with dictionary definitions, to conclude that a finding of intent to inflict harm should be required before a felony can be reclassified. By receding from *Houck* and adopting an all-encompassing definition of the word "weapon," the majority today is subjecting virtually any person who uses an object— including an automobile—to harm another, whether intentionally or not, to automatic reclassification, upon conviction of a felony, and a more severe penalty than the one deemed appropriate by the Legislature under section 775.082, Florida Statutes (2018).

Indeed, in this case, without any finding by the jury that Shepard intended to use the automobile to inflict harm, Shepard's manslaughter conviction was reclassified from a second-degree felony, which carries a maximum sentence of fifteen years' imprisonment, to a first-degree felony, which carries a maximum sentence of thirty years' imprisonment. Shepard ultimately received the maximum sentence for the reclassified crime. Because Shepard's manslaughter conviction was reclassified without any finding that he intended to use the automobile to inflict harm, I would quash the decision of the First District Court of Appeal and require a retrial on the limited issue of intent.

- 13 -

**FACTS**

Shepard was charged with first-degree murder, but the jury convicted him of the lesser-included offense of manslaughter with a weapon. The verdict form did not specify between voluntary or involuntary manslaughter. As a result, we are unable to conclude whether the jury found that the victim's death was the result of a voluntary act or culpable negligence. *See Pethtel v. State*, 177 So. 3d 631, 634 (Fla. 2d DCA 2015) (explaining that these "two categories of manslaughter differ markedly with respect to criminal intent"). The crime of manslaughter, by voluntary act or culpable negligence, is a second-degree felony, which carries a maximum sentence of fifteen years' imprisonment. § 782.07, Fla. Stat. (2018); *see* § 775.082(3)(d), Fla. Stat. (2018).

The instructions given to the jury defined "weapon" as "any object that could be used to cause death or inflict serious bodily harm." Guided by this definition, which essentially directed the verdict in this case, the jury found that Shepard used a weapon, to wit, an automobile. Accordingly, Shepard's felony was reclassified to a first-degree felony. *See* majority op. at 2-3. Shepard was sentenced to the maximum sentence of thirty years' imprisonment, without any finding that he intended to use the automobile to kill the victim.[3]

---

3. Although the First District affirmed the trial court's reclassification of the manslaughter conviction to a first-degree felony, it reversed Shepard's sentence and remanded for resentencing, concluding that the trial court improperly

- 14 -

## ANALYSIS

Florida's reclassification statute enhances the degree of a felony and, consequently, the length of the potential sentence when the defendant "carries, displays, uses, threatens to use, or attempts to use any weapon or firearm" during the commission of the felony. § 775.087(1), Fla. Stat. (2011). The purpose of the statute is to discourage a defendant from using "weapons" or "firearms" in the course of a felony—not to cover the entire universe of methods in which a felony can be committed.

As the majority observes, the reclassification statute does not define "weapon." *See* majority op. at 5. Thus, the issue before the Court today is one of statutory construction.

### *Houck*

In 1995, when presented with the same exact issue we are presented with today—construing the term "weapon" as used in the reclassification statute—this Court engaged in the necessary statutory construction analysis. *Houck*, 652 So. 2d at 360.[4] This Court first concluded that "to determine whether what is used in the

_____

considered Shepard's lack of remorse when sentencing him. *Shepard v. State*, 227 So. 3d 746, 749 (Fla. 1st DCA 2017).

4. In *Houck*, this Court construed the 1991 version of the reclassification statute. 652 So. 2d at 359. However, the 1991 version is essentially the same as the 2011 version—the version at issue in this case. Whereas the 2011 version says "threatens to use, or attempts to use," the 1991 version simply stated "threatens, or

- 15 -

commission of a felony is a weapon within the meaning of the statute . . . the trial court must use the common or ordinary meaning of the word." *Id.* We then explained that the dictionary defined "weapon" as "[a]n instrument of attack or defense in combat, as a gun or sword" and "[a] means used to defend against or defeat another." *Id.* (quoting *American Heritage College Dictionary* 1529 (3d ed. 1993)). Applying that definition to the object at issue in that case, this Court concluded that "[a] paved surface is not commonly understood to be an instrument for combat against another person." *Id.*

Significant to this Court's construction of the term "weapon" in *Houck* was the purpose of the reclassification statute. This Court quoted with approval the reasoning of the district court that "[t]he obvious legislative intent reflected by section 775.087 is to provide harsher punishment for, and hopefully deter, those persons who use *instruments commonly recognized as having the purpose to inflict death and serious bodily injury* upon other persons." *Id.* (emphasis supplied) (quoting *Houck v. State*, 634 So. 2d 180, 184 (Fla. 5th DCA 1994)).

This Court even went so far as to invite the Legislature to amend the reclassification statute if it disagreed with this Court's construction of the statute,

---

attempts to use." *Compare* § 775.087(1), Fla. Stat. (2011), *with* § 775.087(1), Fla. Stat. (1991). This minor change has no effect for purposes of the issue before us today.

stating that "if the word 'weapon' is to be given a meaning other than the common dictionary definition set forth in" *Houck*, "it is within the province of the legislature to provide that definition." *Id.* Significantly, to this day, the Legislature has chosen not to define the word "weapon" in the statute, and has not otherwise made any amendments to that part of the statute. *See Jones v. ETS of New Orleans, Inc.*, 793 So. 2d 912, 917 (Fla. 2001) ("[T]he legislature is presumed to have adopted prior judicial constructions of a law unless a contrary intention is expressed in [a] new version." (quoting *City of Hollywood v. Lombardi*, 770 So. 2d 1196, 1202 (Fla. 2000))).

Because the Legislature has never amended the statute as to the meaning of "weapon" after this Court's decision in *Houck*, I would continue to adhere to that decision. However, because the majority concludes that this Court's construction of the word in *Houck* was "contrary to the usual meaning of the word," majority op. at 6, I turn to conduct the necessary statutory construction analysis.

**Statutory Construction**

"A court's purpose in construing a statute is to give effect to legislative intent, which is the polestar that guides the court in statutory construction." *Larimore v. State*, 2 So. 3d 101, 106 (Fla. 2008). "Where the Legislature does not define the words used in a statute, this Court first examines the plain language of the statute . . . ." *Paul v. State*, 129 So. 3d 1058, 1064 (Fla. 2013). "In

- 17 -

ascertaining the plain meaning of statutory language, consulting dictionary definitions is appropriate."  *State v. Weeks*, 202 So. 3d 1, 7 (Fla. 2016).

The majority concludes that "the plain and ordinary meaning of the word 'weapon' includes not only those objects designed with the purpose of injuring or killing another, such as guns, clubs, or swords, but also any object used with the *intent* to cause harm."  Majority op. at 6-7 (emphasis added).  In reaching this conclusion, the majority asserts that this is "evident in dictionary definitions," *id*., such as *Black's Law Dictionary*, which defines "weapon" as "[a]n instrument used *or* designed to be used" to inflict harm.  *Black's Law Dictionary* 1827 (10th ed. 2014) (emphasis added).  In citing the definition from *Black's Law Dictionary*, however, the majority glosses over the fact that the dictionary included an alternative definition with the use of "or."  That the dictionary provides multiple definitions creates ambiguity as to which meaning the Legislature intended to employ—instruments that are "used" to inflict harm or instruments that are "designed to be used" to inflict harm.

Further, when this Court determined the definition of "weapon" in *Houck*, we relied on another commonly used definition as set forth in the *American Heritage College Dictionary*—"[a]n instrument of attack or defense in combat, *as a gun or sword*" or "[a] means used to defend against or defeat another." *American Heritage College Dictionary* (4th ed. 2000) (emphasis added); *see* 652

- 18 -

So. 2d at 360.  Thus, because dictionary definitions "are unavailing in ascertaining legislative intent," this Court should "look to other canons of statutory construction to derive legislative intent," particularly where, as here, the Legislature has not amended the reclassification statute since this Court's decision in *Houck* more than twenty years ago.  *Weeks*, 202 So. 3d at 7-8.

One such canon is *ejusdem generis*, "which states that when a general phrase follows a list of specifics, the general phrase will be interpreted to include only items of the same type as those listed."  *State v. Hearns*, 961 So. 2d 211, 219 (Fla. 2007).  "A related canon of statutory construction is *noscitur a sociis*, which instructs that 'a word is known by the company it keeps.' "  *Weeks*, 202 So. 3d at 8 (quoting *Nehme v. Smithkline Beecham Clinical Labs, Inc.*, 863 So. 2d 201, 205 (Fla. 2003)).  In the reclassification statute, the Legislature chose to use the phrase "any weapon or firearm."  § 775.087(1).  While that does not mean that the Legislature intended to include only firearms, the fact that it listed specifically firearms as an alternative certainly suggests that the Legislature intended to narrowly define the term "weapon."

Another important canon of statutory construction instructs that "statutes which relate to the same or closely related subjects should be read in pari materia."  *State v. Fuchs*, 769 So. 2d 1006, 1009 (Fla. 2000).  Relevant here, section 790.001(13), Florida Statutes (2017), which is the only section in Florida Statutes

- 19 -

that defines "weapon," defines the term as "any dirk, knife, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon except a firearm or a common pocketknife, plastic knife, or blunt-bladed table knife."[5] While this list is non-exhaustive, it clearly denotes objects that are "commonly understood to be . . . instrument[s] for combat against another person." *Houck*, 652 So. 2d at 360.

Finally, and significantly, because the majority acknowledges that the meaning of "weapon" can be as narrow as an object that is "designed with the purpose of injuring or killing another," or as broad as "any object used with the intent to cause harm," the rule of lenity should be applied. Majority op. at 7. The rule of lenity instructs that when statutory language "is susceptible of different constructions, it shall be construed most favorably to the accused." § 775.021(1), Fla. Stat. (2017); *see also Paul*, 129 So. 3d at 1064 (explaining that where "definiteness is lacking, a statute must be construed in the manner most favorable to the accused." (quoting *Perkins v. State*, 576 So. 2d 1310, 1312 (Fla. 1991))). In Florida, the rule of lenity is "not just an interpretative tool, but a statutory

---

5. While this definition appears in a separate chapter of Florida Statutes from the reclassification statute, it is located in the same part: Part XLVI—"Crimes."

- 20 -

directive." *Weeks*, 202 So. 3d at 8 (quoting *Kasischke v. State*, 991 So. 2d 803, 814 (Fla. 2008)).

Consideration of these canons of statutory construction, alongside the stated purpose of the reclassification statute and the fact that the reclassification statute has not been amended since *Houck*, compels the conclusion that the Legislature intended a narrower definition of "weapon" than the one adopted by the majority today. Instead of considering the statutory definition of "weapon" and relevant canons of statutory construction to discern the Legislature's intent, the majority cites a number of cases from this Court to support its determination "that any object can be a weapon if it is used as one." Majority op. at 7. However, none of these cases offers the support the majority asserts they do. First, many of the cases cited by the majority predate this Court's decision in *Houck*. And, of those that do not predate *Houck*, none involves defining the term "weapon" for purposes of the reclassification statute. *See Guardado v. State*, 965 So. 2d 108, 117 (Fla. 2007); *Buzia v. State*, 926 So. 2d 1203, 1215-16 (Fla. 2006); *Nelson v. State*, 850 So. 2d 514, 527-28 (Fla. 2003); *Sireci v. Moore*, 825 So. 2d 882, 886 (Fla. 2002); *Lawrence v. State*, 698 So. 2d 1219, 1221 (Fla. 1997); *Dale v. State*, 703 So. 2d 1045, 1046-47 (Fla. 1997).

In *Buzia*, *Nelson*, *Sireci*, and *Lawrence*, the issue was whether there was sufficient evidence to sustain the cold, calculated, and premeditated (CCP)

aggravating factor in a death penalty case. In *Guardado*, the Court merely referred to the defendant's use of a knife and breaker bar when discussing the conviction of robbery with a weapon. Finally, although this Court in *Dale* stated that the standard jury instruction for "weapon," which was used in this case, was "a correct statement of law," that case involved whether a BB gun could be considered a deadly weapon. 703 So. 2d at 1046-47. Thus, in none of the post-*Houck* cases cited by the majority was the issue of whether certain objects constituted "weapons" for purposes of the reclassification statute squarely before the Court.

Construing the term narrowly, and in favor of the accused, I would conclude that there should be an explicit finding that the defendant intended to use the object to inflict harm before a felony can be reclassified. Failure to construe the term in this manner will lead to reclassification in any and every situation where any object is used to inflict harm on another. If this is what the Legislature intended, one has to ask what purpose a separate reclassification statute serves. Stated another way, construing "weapon" as the majority does today renders the purpose of the reclassification statute meaningless. *See State v. Bodden*, 877 So. 2d 680, 686 (Fla. 2004) ("[C]ourts should avoid readings that would render part of a statute meaningless." (quoting *State v. Goode*, 830 So. 2d 817, 824 (Fla. 2002))).

## CONCLUSION

For these reasons, I dissent from the majority's adopted definition of

"weapon" for purposes of the reclassification statute, which would include virtually any object. Instead, I would reaffirm *Houck*, or, in the alternative, require an explicit finding of intent before a felony can be reclassified. I would therefore quash the decision of the First District in *Shepard*, and approve the decision of the Second District Court of Appeal in *Gonzalez v. State*, 197 So. 3d 84 (Fla. 2d DCA 2016).

Application for Review of the Decision of the District Court of Appeal – Dual Basis - Certified Direct Conflict of Decisions/Direct Conflict of Decisions

First District - Case No. 1D15-3836

(Duval County)

Wm. J. Sheppard, Elizabeth L. White, Matthew R. Kachergus, Bryan E. DeMaggio, Jesse B. Wilkison, and Camille E. Sheppard of Sheppard, White, Kachergus & DeMaggio, P.A., Jacksonville, Florida,

for Petitioner

Pamela Jo Bondi, Attorney General, Trisha M. Pate and Kaitlin R. Weiss, Assistant Attorneys General, Tallahassee, Florida,

for Respondent