825 So.2d 1034 (2002)
Daniel BURRIS, Appellant,
v.
STATE of Florida, Appellee.
No. 5D01-1913.
District Court of Appeal of Florida, Fifth District.
September 13, 2002.
*1035 James B. Gibson, Public Defender, and Thomas J. Lukashow, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Wesley Heidt, Assistant Attorney General, Daytona Beach, for Appellee.
ORFINGER, R.B., J.
Daniel Burris appeals his conviction of robbery with a deadly weapon. He contends that the information charging him with robbery with a deadly weapon failed to allege that offense as a matter of law. We agree and reverse.
While driving his automobile through the parking lot of a Wal-Mart store, Burris reached out of the automobile's window and attempted to snatch a woman's purse. The victim would not release the purse, and as the automobile moved forward, she was knocked off her feet and dragged along the pavement. After the strap broke, the victim lost her hold on the purse, and Burris drove away, leaving the victim with numerous cuts, scratches, and bruises. Based on information received from witnesses to the crime, Burris was arrested and charged by information with robbery with a deadly weapon. Specifically, the information alleged that in violation of section 812.13(2)(a), Florida Statutes (2001), by force, violence, assault or putting in fear, Burris took the victim's purse with the intent to temporarily or permanently deprive the victim of her right to it, "and in the course of committing said robbery, Daniel Jacob Burris did use a deadly weapon, to-wit: an automobile." (emphasis added).
To the extent relevant for purposes of this appeal, section 812.13, Florida Statutes (2001) provides:
(1) "Robbery" means the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.
(2)(a) If in the course of committing the robbery the offender carried a firearm or other deadly weapon, then the robbery is a felony of the first degree, punishable by imprisonment for a term of years not exceeding life imprisonment or as provided in s. 775.082, s. 775.083, or s. 775.084.
(b) If in the course of committing the robbery the offender carried a weapon, then the robbery is a felony of the first degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
(c) If in the course of committing the robbery the offender carried no firearm, deadly weapon, or other weapon, then the robbery is a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
(emphasis added).
Burris filed a motion to dismiss claiming that the information was defective because it failed to allege that he "carried" a deadly weapon as required by section 812.13(2)(a); rather, the information alleged that he "used" a deadly weapon, *1036 specifically an automobile. He further argued that because an automobile could not be "carried" in the course of committing a robbery, he could not be convicted of robbery with a deadly weapon. The trial court denied the motion to dismiss. Reserving the right to appeal the denial of his motion to dismiss, Burris pled no contest to the charge of robbery with a deadly weapon, and this appeal followed.
There is no question that Burris used his automobile in the course of committing the robbery. It is also without question that an automobile may qualify as a "deadly weapon," if used, as was the automobile in this case. See Jenkins v. State, 747 So.2d 997 (Fla. 5th DCA 1999). However, as in the trial court, Burris contends that because he did not "carry" an automobile, but simply "used" one, the charge of robbery with a deadly weapon was legally insufficient and should have been reduced to simple robbery[1] or robbery by sudden snatching.[2]
In denying the motion to dismiss, the trial court properly relied on Jackson v. State, 662 So.2d 1369 (Fla. 1st DCA 1995), wherein the first district court said:
We agree with the trial court that the intended meaning of the word "carry," as used in section 812.13(2)(a), must be sought by use of logic and common sense. The verb "carry" has many meanings. One of the principal meanings ascribed to it is "to wear, hold, or have around one," in the sense of possessing. The Random House Dictionary of the English Language 319 (2d ed.1987) (unabridged). We are of the opinion that ascribing such a meaning to "carry," as used in section 812.13(2)(a), is perfectly consistent with the obvious intent behind that statutory provision. See, e.g., State v. Webb, 398 So.2d 820, 824 (Fla.1981) ("legislative intent is the polestar by which the court[s] must be guided" in statutory construction, even when at odds with "the strict letter of the statute"). It seems to us that the clear intent behind section 812.13(2)(a) is to deter the commission of robberies by persons possessing deadly weapons, and thereby to reduce the likelihood of death or serious injury to victims and bystanders. See, e.g., State v. Baker, 452 So.2d 927 (Fla.1984) (punishment is enhanced under statute for possession of deadly weapon during commission of offense; use of weapon is not necessary).
Id. at 1371-72. See Nation v. State, 668 So.2d 284 (Fla. 1st DCA 1996).
In construing a statute, we first consider its language. If the language is clear, it must be regarded as conclusive, absent a clearly expressed contrary legislative intent. Russello v. United States, 464 U.S. 16, 20, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983). We also must follow the dictates of the Legislature set forth in section 775.021(1), Florida Statutes (2001), which provides:
(1) The provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of constructions, it shall be construed most favorably to the accused.
In Jenkins, Judge Harris discussed the carrying requirement of the robbery statute as it relates to motor vehicles:
[T]he Jackson court interpreted the term "offender carried a weapon" as including the concept of the offender being carried by a weapon. If the offender "was wearing" the automobile while committing the offense then, according to Jackson, he "possessed" it and it was the fact that the offender *1037 possessed a weapon, not that he carried one, which was really of legislative concern. This liberal interpretation of the statute ignores the fact that the legislature may have chosen its terminology with care in order to limit the term "weapon" to the statutory definition contained in Chapter 790, Florida Statutes: "any dirk, metallic knuckles, slingshot, billie, tear gas gun, chemical weapon or destructive device, or other deadly weapon except a firearm or a common pocket knife" or, if not so limited, at least limited to weapons of similar characteristics. All of these items are capable of being carried, and if firearms (covered by a different section of the statute) are added to the mix, the legislature has by this provision banned all but the most exotic possibilitiesplanes, trains, and automobilesas weapons. For example, a kitchen sink could qualify as a weapon if it was detached from its plumbing and carried during the robbery with the purpose to threaten or harm the victim. Houck interpreted an enhancer provision which provided that a weapon could be determined from its use and held that any instrument "commonly recognized as having the purpose to inflict death or serious bodily injury upon another person" expanded the statutory list of weapons available for enhancement under that statute. Houck v. State, 634 So.2d 180 (Fla. 5th DCA 1994). In our case, however, the legislature limited weapons to those subject to being carried. Because this interpretation is not per se unreasonable, the defendant is statutorily entitled to it.
747 So.2d at 1000-01 (Harris, J., dissenting) (footnote omitted).[3] Our supreme court has also recognized the distinction between carrying a deadly weapon and using a deadly weapon in State v. Baker, 452 So.2d 927 (Fla.1984), by holding that "[t]he statutory element which enhances punishment for armed robbery is not the use of the deadly weapon, but the mere fact that a deadly weapon was carried by the perpetrator." Id. at 929.
While there are, as Jackson observes, some definitions of the word "carry," that might encompass Burris's use of his automobile in this case, we are constrained by the rule of statutory construction that requires that we give statutory language its plain and ordinary meaning, unless the words are defined in the statute or by the clear intent of the Legislature. Green v. State, 604 So.2d 471, 473 (Fla.1992). The word "carry" is ordinarily understood to mean "to hold or to have on one's person." See Merriam-Webster's Collegiate Dictionary 175 (10th ed.1993); American Heritage Dictionary 243 (2d ed.1982). There is nothing in the statute to suggest that the Legislature intended a more arcane or rarely used meaning of the word "carry." In common parlance, automobiles carry peoplepeople do not carry automobiles. Using the ordinary meaning of the words in the statute, we conclude that Burris could not have carried the motor vehicle as required by the robbery statute.
The Legislature is free, of course, to amend the robbery statute to include the use of a deadly weapon, should it choose to do so. To some extent, that may be unnecessary because the State could proceed under section 775.087, Florida Statutes (2001), which enhances by one degree, any felony when the offender carries, displays, or uses any weapon or firearm, except for *1038 felonies in which the use of a weapon or firearm is an essential element.[4]
Because we conclude that the question of whether an automobile can be "carried" as a weapon within the meaning of section 812.13(2)(a) is dispositive, we need not address Burris's claim regarding the information's failure to precisely track the statute.
For the foregoing reasons, we remand this matter with directions to enter a judgment of guilt as to robbery,[5] and to resentence Burris accordingly. We also certify conflict with Jackson and Nation.
CASE REMANDED WITH DIRECTIONS; CONFLICT CERTIFIED.
GRIFFIN and SAWAYA, JJ., concur.
NOTES
[1] § 812.13(2)(c), Fla. Stat. (2001).
[2] § 812.131, Fla. Stat. (2001).
[3] In Nation, Judge Ervin, while concurring with the majority because of the first district's earlier decision in Jackson, recognized that "a proper construction ... means simply that a deadly weapon is one capable of being picked up and physically carried during its use in the course of a robbery." Nation, 668 So.2d at 287 (Ervin, J. concurring).
[4] In observing the possible application of section 775.087 to the instant case, we do not address the implications, if any, of the Supreme Court's holding in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), as modified by Harris v. United States, ___ U.S. ___, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002).
[5] § 812.13(1), Fla. Stat. (2001).