875 So.2d 408 (2004)
STATE of Florida, Petitioner,
v.
Daniel BURRIS, Respondent.
No. SC02-2193.
Supreme Court of Florida.
April 8, 2004.
*409 Charles J. Crist, Jr., Attorney General, and Kellie A. Nielan and Wesley Heidt, Assistant Attorneys General, Daytona Beach, Florida, for Petitioner.
James B. Gibson, Public Defender, and Thomas Lukashow, Assistant Public Defender, Seventh Judicial Circuit, Daytona Beach, Florida, for Respondent.
BELL, J.
If an automobile is used in the course of committing a robbery, may the offender be deemed to have "carried" the automobile as a "firearm or other deadly weapon" under section 812.13(2)(a), Florida Statutes (2001)? We have for review Burris v. State, 825 So.2d 1034 (Fla. 5th DCA 2002), where the Fifth District Court of Appeal answered this question in the negative and certified conflict with Jackson v. State, 662 So.2d 1369 (Fla. 1st DCA 1995), and Nation v. State, 668 So.2d 284 (Fla. 1st DCA 1996). We approve the decision of the district court in Burris.

I. BACKGROUND
Daniel Burris drove by a woman who was walking in a Wal-Mart store parking lot. He reached out through the window of his pickup truck and grabbed her purse. The victim would not release the purse, and as Burris drove on, she was knocked off her feet and dragged along the pavement. After the strap broke, the victim lost her hold on the purse and Burris drove away with the purse, leaving the victim behind with cuts, scratches, and bruises. The State charged Burris with robbery with a deadly weapon under section 812.13(2)(a). This section enhances the punishment for robbery from a second-degree felony to a first-degree felony punishable by life where the offender, in the course of committing the robbery, "carried a firearm or other deadly weapon." Burris filed a motion to dismiss the charge because the information as filed alleged that Burris "used" rather than "carried" his truck as a deadly weapon. The trial court denied the motion to dismiss. Burris entered a plea of nolo contendere to the charge of robbery with a deadly weapon, *410 reserving the right to appeal the denial of his motion to dismiss.
On appeal, the Fifth District held that an automobile could not be carried as a deadly weapon under the robbery statute. Burris, 825 So.2d at 1037. In the companion cases of Nation and Jackson, the First District Court of Appeal held that an automobile could be carried as a deadly weapon under section 812.13(2)(a) where the codefendants used the automobile to run down and incapacitate a pedestrian and then stole the victim's wallet. Nation, 668 So.2d at 285; Jackson, 662 So.2d at 1371.

II. DISCUSSION
The narrow issue before this Court is whether an automobile may be "carried" as a deadly weapon under section 812.13(2)(a) of the robbery statute so as to allow an enhanced conviction. This question of statutory interpretation is subject to de novo review. State v. Glatzmayer, 789 So.2d 297, 301 n. 7 (Fla.2001). Our purpose in construing a statute is to give effect to the Legislature's intent. State v. J.M., 824 So.2d 105, 109 (Fla.2002). When a statute is clear, courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent. Lee County Elec. Coop., Inc. v. Jacobs, 820 So.2d 297, 303 (Fla.2002). Instead, the statute's plain and ordinary meaning must control, unless this leads to an unreasonable result or a result clearly contrary to legislative intent. Id.
Section 812.13, Florida Statutes (2001), provides:
(1) "Robbery" means the taking of money or other property ... from the person or custody of another ... when in the course of the taking there is the use of force, violence, assault, or putting in fear.
(2)(a) If in the course of committing the robbery the offender carried a firearm or other deadly weapon, then the robbery is a felony of the first degree, punishable by [a maximum sentence of life imprisonment]....
Id. (emphasis added). Under the express language of section 812.13(2)(a), the punishment for robbery is enhanced if the offender "carried a firearm or other deadly weapon" while committing the robbery. Thus, the critical question is whether or not an offender can "carry" an automobile while committing a robbery.
In Jackson and Nation, the First District confronted codefendants who made the same basic argument Burris made to the Fifth District. The appellants argued that because it is physically impossible for anyone to carry an automobile in the course of committing a robbery, the enhancement under section 812.13(2)(a) for carrying a "firearm or other deadly weapon" was inapplicable. In rejecting this argument, the First District read the verb "carry" as synonymous with "possess." It did so because it interpreted the legislative intent behind section 812.13(2)(a) as to deter the possession of deadly weapons by persons committing robberies. Specifically, the First District stated:
We agree with the trial court that the intended meaning of the word "carry," as used in section 812.13(2)(a), must be sought by use of logic and common sense. The verb "carry" has many meanings. One of the principal meanings ascribed to it is "to wear, hold, or have around one," in the sense of possessing. The Random House Dictionary of the English Language 319 (2d ed.1987) (unabridged). We are of the opinion that ascribing such a meaning to "carry," as used in section 812.13(2)(a), is perfectly consistent with the obvious intent behind the statutory provision. See, e.g., State *411 v. Webb, 398 So.2d 820, 824 (Fla.1981) ("legislative intent is the polestar by which the court[s] must be guided" in statutory construction, even when at odds with "the strict letter of the statute"). It seems to us that the clear intent behind section 812.13(2)(a) is to deter the commission of robberies by persons possessing deadly weapons, and thereby to reduce the likelihood of death or serious injury to victims and bystanders. See, e.g., State v. Baker, 452 So.2d 927 (Fla.1984) (punishment is enhanced under statute for possession of deadly weapon during commission of offense; use of weapon is not necessary).
Jackson, 662 So.2d at 1371-72.
The First District also rejected the appellant's argument because it concluded that to rule otherwise would lead to "an absurd and unreasonable result." Id. at 1372. It did so by referencing cases where persons were convicted of armed robbery with a deadly weapon even though the weapon was never used, where the weapon was stolen in the course of the robbery, or where an accomplice carried a weapon notwithstanding lack of knowledge by the defendant that the accomplice had the weapon.
The Fifth District reached the opposite conclusion in Burris. It reasoned:
While there are, as Jackson observes, some definitions of the word "carry," that might encompass Burris's use of his automobile in this case, we are constrained by the rule of statutory construction that requires that we give statutory language its plain and ordinary meaning, unless the words are defined in the statute or by the clear intent of the Legislature. Green v. State, 604 So.2d 471, 473 (Fla.1992). The word "carry" is ordinarily understood to mean "to hold or to have on one's person." See Merriam-Webster's Collegiate Dictionary 175 (10th ed.1993); American Heritage Dictionary 243 (2d ed.1982). There is nothing in the statute to suggest that the Legislature intended a more arcane or rarely used meaning of the word "carry." In common parlance, automobiles carry peoplepeople do not carry automobiles. Using the ordinary meaning of the words in the statute, we conclude that Burris could not have carried the motor vehicle as required by the robbery statute.
Burris, 825 So.2d at 1037. Finding no sign of legislative intent to apply an unusual meaning of "carry" and also recognizing the legislatively prescribed rule of lenity in section 775.021(1), Florida Statutes (2001), the Fifth District concluded that Burris could not have carried the automobile as a deadly weapon under section 812.13(2)(a). The Fifth District did not expressly address whether its interpretation would lead to an absurd and unreasonable result.
We agree with the reasoning of the Fifth District. The word "carry" is not defined in the statute, nor is there any clear indication of legislative intent to construe "carry" differently from its commonly understood meaning. So, we must look to its common or "plain and ordinary" meaning. The relevant definitions (or senses), illustrations of uses, and synonyms used by English language dictionaries for "carry" all include the concept of holding, supporting, or bearing. In addition to the Merriam-Webster definition cited in Burris, the first definition and illustration of use for "carry" in the American Heritage Dictionary are "[t]o bear or convey from one place to another; transport: carry mail." American Heritage Dictionary 243 (2d ed.1982). And the first two definitions and illustrations of senses used in the dictionary cited by the First District in Jackson give this same sense. The Random House Dictionary of the English *412 Language 319 (2d ed.1987) (unabridged) defines "carry" as meaning:
1. to take or support from one place to another; convey; transport: He carried her for a mile in his arms. This elevator cannot carry more than ten people.

2. to wear, hold, or have around one: He carries his knife in his pocket. He carries a cane.

See also Webster's Third New International Dictionary 343 (1981) (unabridged). The concept of holding, supporting, or bearing is the fundamental sense of the verb "carry."
And, contrary to the First District's deduction, "possess" is not a synonym commonly ascribed to "carry" in the sense at issue. For example, Webster's Third New International Dictionary 343 (1981) (unabridged) gives four synonyms of "carry" and provides an important description:
syn. BEAR, CONVEY, TRANSPORT, TRANSMIT: CARRY indicates moving to a location some distance away while supporting or maintaining off the ground. Orig. indicating movement by car or cart....
Id. at 343. Indeed, it is only when "carry" is defined as "to hold on one's person," that any of the above dictionaries, or common thesauruses such as Roget's II: The New Thesaurus (expanded ed.1988), and J.I. Rodale, The Synonym Finder (1978), equate "possess" with "carry." "Possess" is never ascribed as synonymous with "carry" when an inanimate object, such as an automobile, is carrying a person.
These sources uniformly support only one conclusion about the plain and ordinary meaning of "carry" as used in section 812.13(2)(a). The verb "to carry" is commonly understood to include the concept of the offender holding, supporting, or bearing "a firearm or other deadly weapon." Under the facts before us, the offender was not holding, supporting, or bearing the automobile. As the Fifth District correctly noted, "In common parlance, automobiles carry peoplepeople do not carry automobiles." Burris, 825 So.2d at 1037. So, when an offender drives an automobile during the commission of a robbery, the automobile is carrying the offenderthe offender is not carrying the automobile.
The State argues that in enacting section 812.13(2)(a), the Legislature intended to deter robbers from either having or using a deadly weapon and that a restrictive interpretation of "carry" would circumvent legislative intent. As stated earlier, a statute's plain and ordinary meaning must control unless this leads to an unreasonable result or a result clearly contrary to legislative intent. Lee County Elec. Coop., Inc. v. Jacobs, 820 So.2d at 303. Without discussing the plain and ordinary meaning of "carry" (or the rule of lenity, which we discuss later), the First District essentially adopted this argument in Jackson and Nation to support its conclusion that "carry" is synonymous with "possessing." As previously quoted, the First District in Jackson stated its understanding of the legislative intent behind section 812.13(2)(a) as: "to deter the commission of robberies by persons possessing deadly weapons, and thereby to reduce the likelihood of death or serious injury to victims and bystanders." 662 So.2d at 1372.
Indeed, the Legislature's choice of the words "carried a firearm or other deadly weapon" logically indicates an intent focused on deterring robbers from bringing to a crime scene such portable instruments for the purpose of inflicting injury or causing death. We recognized a similar intent in the general enhancement statute. In State v. Houck, 652 So.2d 359 (Fla.1995), this Court interpreted "weapon" in the context of section 775.087, Florida Statutes (1991), the general enhancement statute. We stated that "[t]he obvious legislative *413 intent ... is to provide harsher punishment for, and hopefully deter, those persons who use instruments commonly recognized as having the purpose to inflict death and serious bodily injury upon other persons." State v. Houck, 652 So.2d at 360 (quoting Houck v. State, 634 So.2d 180, 184 (Fla. 5th DCA 1994)). However, despite this recognition of legislative intent, we declined to define any object that may be used to inflict death or serious bodily injury as a deadly weapon. So, in Houck, we rejected the State's argument that pavement could qualify as a weapon to enhance a homicide crime, in part because "[a] paved surface is not commonly understood to be an instrument for combat against another person." Houck, 652 So.2d at 360.
As we have previously held, there is a clear legislative intent within section 812.13(2)(a) to enhance the punishment of not only those persons who use but also those persons who merely carry "firearms or other deadly weapons" when they commit a robbery. See, e.g., State v. Baker, 452 So.2d 927 (Fla.1984). In Baker, we recognized the distinction between carrying a deadly weapon and using a deadly weapon and held that "the statutory element which enhances punishment for armed robbery is not the use of the deadly weapon, but the mere fact that a deadly weapon was carried by the perpetrator." Id. at 929 (emphasis added). However, similar to our reasoning in Houck, it is not clear that the Legislature's intent to deter the presence of "firearms or other deadly weapons" during the commission of robberies extends beyond those objects commonly recognized as weapons. Like the pavement used by the offender in Houck, an automobile is not commonly understood to be an instrument for combat against another person. Though certainly capable of inflicting death or injury, as with the pavement in Houck, the ordinary purpose of automobiles is not as instruments for combat.
We do not question that automobiles have been held to be deadly weapons in other criminal statutes.[1] However, both the language used and the nature of the underlying offenses punished by those statutes clearly permit such an interpretation. Generally, those statutes under which automobiles are deemed deadly weapons proscribe the "use" of a deadly weapon as an element of either aggravated assault or aggravated battery. By contrast, the requirement in the robbery statute that an offender "carry," as opposed to "use," a deadly weapon tends to exclude automobiles as deadly weapons. Essentially, there is a clear indication of legislative intent to deter the commission of robberies by persons carrying firearms or other deadly weapons. However, there is no clear indication that the Legislature intended to deter robbers from bringing automobiles to crime scenes.
As the State argues here, and as accepted by the First District, we could infer that the Legislature would intend to deter a robber from using an automobile as a weapon and, thus, that the statute should penalize a robber who uses an automobile as a weapon. However, this interpretation would extend the reach of section 812.13(2)(a) beyond its express language based solely upon a very broad inference rather than any clear indication of legislative intent. Attractive as this interpretation may be from a policy standpoint, we must resist the temptation to so expand the statute. To construe the statute in a *414 way that would extend or modify its express terms would be an inappropriate abrogation of legislative power. Holly v. Auld, 450 So.2d 217, 219 (Fla.1984). Just as the Fifth District did, we believe the plain language of section 812.13(2)(a) and the statutory rules of lenity (as discussed below) dictate that we resolve this issue in favor of the defendant.[2]
Beyond the legislative intent argument, the State argues that a strict interpretation of "carry" in the robbery statute may produce an unreasonable result. A statute's plain and ordinary meaning controls only if it does not lead to an unreasonable result. Lee County, 820 So.2d at 303. The State asserts that if the plain language of section 812.13(2)(a) is held to exclude automobiles as deadly weapons, then an offender may be charged with robbery with a deadly weapon if the offender carries brass knuckles during the offense but not if the offender runs over a victim with a car as the defendants did in Nation and Jackson. See Nation, 668 So.2d at 285; Jackson, 662 So.2d at 1371. The State argues that it is unreasonable to disable the State from prosecuting an offender for purposefully using an automobile as a weapon during a robbery while another offender's mere possession of a less deadly (but portable) weapon can be penalized.
Our holding today creates no such unreasonable result or disability.[3] Though an enhanced charge under section 813.12(2)(a) is inappropriate under the facts of this case, the State has other statutory alternatives under which it could charge an offender who uses an automobile or other nonportable weapon during a robbery and injures a victim or bystander.[4] For example, the State could charge such an offender with one count of robbery *415 under section 812.13(2)(c) (enhanced by section 775.087(1)) and with a second count of aggravated battery under section 784.045, Florida Statutes (2002). See Cave v. State, 613 So.2d 454, 455 (Fla.1993) (holding that a defendant may be charged with both armed robbery and aggravated battery, without a double jeopardy violation, because each crime contains an element not contained in the other).
Finally, we address the rule of lenity. In addition to the plain and ordinary meaning of "carry" and the fact that this definition does not lead to an unreasonable result or a result clearly contrary to legislative intent, the legislatively prescribed rule of lenity supports an interpretation of section 812.13(2)(a) that excludes automobiles as a "firearm or other deadly weapon" that an offender may carry. The Legislature has stated that criminal statutes "shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused." § 775.021(1), Fla. Stat. (2002). As discussed above, the plain and ordinary meaning of "carry" precludes an automobile from being "a firearm or other deadly weapon" that an offender "carries" in the course of committing a robbery. Thus, Burris is entitled to the construction most favorable to him, i.e., that he cannot be charged under section 812.13(2)(a) with robbery with a deadly weapon based on his use of an automobile while committing a robbery.

CONCLUSION
In conclusion, we hold that an automobile may not be "carried" as a deadly weapon under section 812.13(2)(a) of the robbery statute so as to allow an enhanced conviction. This conclusion is dictated by the plain and ordinary meaning of the statutory language, the absence of any clear legislative intent to the contrary, and the application of the statutory rule of lenity. We thus approve the decision of the Fifth District in Burris and disapprove the decisions of the First District in Jackson and Nation to the extent they conflict with this opinion. Because our holding is dispositive, we do not address Burris's claim regarding the failure of the information as filed to track the language of the statute.
It is so ordered.
ANSTEAD, C.J., and WELLS, PARIENTE, LEWIS, QUINCE, and CANTERO, JJ., concur.
NOTES
[1] See, e.g., Williamson v. State, 92 Fla. 980, 111 So. 124 (1926) (aggravated assault); City of Coral Springs v. Forfeiture of a 1997 Ford Ranger Pickup Truck, 803 So.2d 847 (Fla. 4th DCA 2002) (aggravated battery).
[2] The State made a similar legislative intent argument in Overstreet v. State, 629 So.2d 125 (Fla.1993). In rejecting that argument, we stated:

Legislative intent must be determined primarily from the language of the statute. The legislature is assumed to know the meaning of the words in the statute and to have expressed its intent by the use of those words. In the instant case, the plain language of subsection 775.084(2) includes only those offenses occurring while on probation, and nothing in the statute indicates any legislative intent to the contrary. We decline to add words to a statute where, as in this case, the language is clear and unambiguous. "It is a settled rule of statutory construction that unambiguous language is not subject to judicial construction, however wise it may seem to alter the plain language." If the legislature did not intend the results mandated by the statute's plain language, then the appropriate remedy is for it to amend the statute.
Id. at 126 (citations omitted). As in Overstreet, we decline to ascribe an unusual meaning to "carry" or add words to section 812.13(2)(a) in order to obtain a result beyond the statute's plain language.
[3] As the Fifth District noted, for future crimes "the Legislature is free ... to amend the robbery statute to include the use of a deadly weapon, should it choose to do so." Burris, 825 So.2d at 1037. Such a broad proscription for weapons or firearms is already employed in section 775.087, Florida Statutes (2002), which was first enacted in 1974. This section reclassifies certain felonies in which the offender "carries, displays, uses, threatens to use, or attempts to use any weapon or firearm." Id. § 775.087(1) (emphasis added).
[4] The State also has a new, separate offense created by the Legislature to directly address the sudden snatching of purses and other objects from victims. In 2001, the Florida Legislature passed section 812.131, Florida Statutes (2001) (robbery by sudden snatching), which expressly addresses the type of offense committed by Burris. This new section makes the maximum penalty a second-degree felony if an offender "carried a firearm or other deadly weapon." If no "firearm or other deadly weapon" is carried, the offense is a third-degree felony.