OSTERHAUS, J.
In this case, we must decide whether the Florida Department of Transportation (FDOT) properly dismissed a petition for administrative hearing filed by the appellant billboard sign owners who sought process and redress under § 479.25(1), Florida Statutes (2012). We affirm FDOT’s order of dismissal because Appellants’ nonconforming signs are not entitled to redress under this section.
I.
Appellant, CBS Outdoor, Inc., owns three “nonconforming” signs (billboards) erected in 1967 along what is now Interstate 95 (“1-95”) in Jacksonville, Florida. CBS Outdoor and SLG Investments, LLC, (“Appellants”) both own land upon which the billboards are erected. Adjacent to these signs, FDOT erected a sound wall on its own property along 1-95 that will screen or obstruct the view of Appellants’ signs from the interstate.
Under Florida law, when signs become screened or blocked due to the construction of a sound barrier, the owners of some types of signs may raise the height of their signs or receive other statutorily provided remedies. See § 479.25, Fla.' Stat. Appellants believe that their signs comport with § 479.25 and must receive the process and remedies available under this law. They demanded agency action from FDOT along this line, but FDOT denied their request. FDOT’s view was that the process provided in § 479.25 did not apply to Appellants’ signs because they do not conform with certain state and federal sign requirements-they are’ “nonconforming” signs. Appellants sought an administrative hearing pursuant to § 120.57, Florida Statutes, to review FDOT’s denial of their demand for agency action under § 479.25, but FDOT dismissed the petition on standing grounds because of its view that nonconforming signs fall outside of § 479.25’s regime. Appellants then appealed.
II.
The issue Appellants raise is a matter of statutory construction subject to de novo review. Dep’t of Revenue v. Lockheed Martin Corp., 905 So.2d 1017, 1020 (Fla. 1st DCA 2005) (citing State v. Burris, 875 So.2d 408, 410 (Fla.2004)). The plain language of the statute “is the polestar that guides a court’s statutory construction analysis.” Id. (citing State v. J.M., 824 So.2d 105, 109 (Fla.2002)). But where there is ambiguity in a statute, the court is mindful of the deference due to the interpretation of the administrative agency responsible for enforcing the law. Colbert v. Dep’t of Health, 890 So.2d 1165, 1166 (Fla. 1st DCA 2004) (citing Natelson v. Dep’t of Ins., 454 So.2d 31, 32 (Fla. 1st DCA 1984)) (“[O]ur review standard over an agency’s interpretation of law is that of clearly erroneous, meaning the interpretation will be upheld if the agency’s construction falls within the permissible range of interpretations.”).
Section 479.25(1) establishes which sign owners can receive redress when the visibility of a sign is screened or blocked due to the construction of a sound barrier. It provides, in relevant part, that:
[1] The owner of a lawfully erected sign that is governed by and conforms to state and federal requirements for land use, size, height, and spacing may increase the height above ground level of *386 such sign at its permitted location if a noise-attenuation barrier is permitted by or erected by any governmental entity in such a way as to screen or block visibility of the sign. [2] Any increase in height permitted under this section may only be the increase in height which is required to achieve the same degree of visibility from the right-of-way which the sign had prior to the construction of the noise-attenuation barrier, notwithstanding the restrictions contained in s. 479.07(9)(b). [3] A sign reconstructed under this section shall comply with the building standards and wind load requirements set forth in the Florida Building Code, [f] If construction of a proposed noise-attenuation barrier will screen a sign lawfully permitted under this chapter, the department shall provide notice to the local government or local jurisdiction within which the sign is located prior to erection of the noise-attenuation barrier. [5] Upon a determination that an increase in the height of a sign as permitted under this section will violate a provision contained in an ordinance or land development regulation of the local government or local jurisdiction, the local government or local jurisdiction shall so notify the department. [6] When notice has been received from the local government or local jurisdiction prior to erection of the noise-attenuation barrier, the department shall: [follow various procedures leading to a remedy for affected sign owners].
§ 479.25(1), Fla. Stat. (emphasis added). A sign must fall within the class of signs “lawfully erected,” “conform[ing] to state and federal requirements,” and “lawfully permitted” in order to qualify for the process and benefits available under this statute. Appellants argue that § 479.25 affords remedies to owners of conforming and nonconforming signs alike. But three sentences in § 479.25(1) — sentences 1, 4, and 5 marked above — demonstrate that their signs do not qualify for benefits and process under the statute.
Sentence 1 of § 479.25(1), says rather clearly that the owner of a sign may increase its height if the sign “conforms to [certain] state and federal requirements.” Id. In their reply brief, Appellants concede that their signs do not conform to state and federal requirements under sentence 1. But they argue instead that sentence 4 qualifies them for the statute’s process and remedies because, despite not conforming to sentence 1, their signs are “lawfully permitted under this chapter.” Appellants argue that all “permitted” signs — whether conforming or not to state and federal requirements — fall within the statute and may benefit from its process and remedy scheme.
But we disagree. Even if sentence 4 could be read as Appellants interpret it to open the statute broadly to all nonconforming signs — and FDOT vehemently disagrees on this point — the next sentence slams that door shut. Sentence 5 stands as a gatekeeper of sorts to the process discussed in sentence 6 and beyond. And it hinges additional process on a determination of whether a sign can increase in height “as permitted under this section.” (Emphasis added). Sentence 5’s “under this section” language hearkens back to sentence l’s discussion of the class of signs that may be increased in height under this section: ones that “conform! ] to state and federal requirements for land use, size, height, and spacing!.]” Id. This excludes Appellants’ signs which are nonconforming for purposes of sentence l.[1] As such, we *387 conclude that FDOT correctly dismissed Appellants’ petition below because their nonconforming signs cannot qualify for the benefits and process afforded under § 479.25.[2]
Appellants additionally assert alternative constitutional arguments that the exclusion of their nonconforming signs from § 479.25’s benefits violates due process, equal protection, and private property rights. We don’t think so. First, Appellants’ due process and equal protection arguments must fail because FDOT has offered a rational, non-arbitrary reason for excluding nonconforming signs from redress under § 479.25: federal funding. Allowing modifications to nonconforming signs could put the state’s federal highway funding at risk. The government leans hard on the states by conditioning serious money on whether they will accommodate federal aesthetic preferences along the interstate highways. See, e.g., 23 U.S.C.A. § 181(b) (providing that states not in compliance and controlling outdoor advertising will lose interstate funding at a rate of 10% per annum until brought into compliance).[3] The states must comply with federal requirements to keep their funds flowing. Under federal rules, FDOT could lose federal funding if they allow nonconforming signs to be raised. See Fla. Admin. Code Ann. R. 14-10.007 (2012); 23 C.F.R. § 750.707 (2012).
Second, the record does not support Appellants’ takings claim at this juncture. The sound barrier in this case was constructed on FDOT’s own right of way, not on Appellants’ property. Furthermore, Florida law has not recognized the visibility of one’s signs along the interstate as a property right. While Florida law in § 479.24(1), Florida Statutes, has provided that the owner of a nonconforming sign, as defined in § 479.01(17), is entitled to just compensation “upon [FDOT’s] removal of a lawful nonconforming sign” (§ 479.24(1), Fla. Stat. (emphasis added)), Appellants in this case have not claimed that FDOT has “removed” their nonconforming signs, but only affected their visibility.
III.
In conclusion, we affirm FDOT’s order of dismissal because Appellants’ nonconforming signs are not entitled to the process and remedies provided for in § 479.25, Florida Statutes.
LEWIS, C.J., and MARSTILLER, J., concur.

. A letter from FDOT to the City of Jacksonville contained in the record confirms that *387 Appellants’ signs were designated as nonconforming signs.

. To the extent that the language of this statute is ambiguous, which both sides have conceded at points, our conclusion foreclosing the statute’s process and remedies to Appellants' signs finds support in FDOT’s own interpretation of the law that it is charged with administering. See, e.g., § 479.02, Fla. Stat. (assigning FDOT with responsibility for regulating signs and enforcing federal sign requirements). FDOT interprets § 479.25 to exclude a broader set of nonconforming signs from the scheme (see § 479.01(17), Fla. Stat.), including signs rendered nonconforming for reasons other than specified in sentence 1.

. See also 23 U.S.C.A. § 131(a) ("The Congress hereby finds and declares that the erection and maintenance of outdoor advertising signs, displays, and.devices in areas adjacent to the Interstate System and the primary system should be controlled in order to protect the public investment in .such highways, to promote the safety and récreational value of public travel, and to preserve natural beauty.”).