DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE OF FLORIDA,**
Appellant,

v.

**PETER PERAZA,**
Appellee.

No. 4D16-2675

[August 30, 2017]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michael A. Usan, Judge; L.T. Case No. 15-15844CF10A.

Pamela Jo Bondi, Attorney General, Tallahassee, and Melanie Dale Surber, Senior Assistant Attorney General, West Palm Beach, for appellant.

Eric T. Schwartzreich and Anthony J. Bruno of Schwartzreich and Associates, P.A., Fort Lauderdale, for appellee.

GERBER, C.J.

The state appeals from the circuit court's final order granting a law enforcement officer's amended motion to dismiss the indictment against him for manslaughter with a firearm. The officer was indicted after shooting a man who: (1) was walking down the street with an air rifle which appeared to be a firearm; (2) failed to obey officers' commands to drop the weapon; and (3) pointed the weapon towards officers before being shot. The court found that the officer was entitled to immunity from prosecution under sections 776.012(1) and 776.032(1), Florida Statutes (2013), more commonly known as Florida's "Stand Your Ground" law.

The state argues that, as held in *State v. Caamano*, 105 So. 3d 18 (Fla. 2d DCA 2012), law enforcement officers are not entitled to seek immunity under the Stand Your Ground law. The state reasons that law enforcement officers already are provided a defense under section 776.05(1), Florida Statutes (2013), describing the justifiable use of force in making an arrest. We disagree with the state's argument and with *Caamano*. Therefore, we affirm the circuit court's order and certify conflict with *Caamano*.

We present this opinion in four parts:
1) the circuit court's order;
2) the parties' arguments on appeal;
3) our examination of *Caamano*; and
4) our review.

## 1. *The Circuit Court's Order*

The circuit court wrote a well-detailed thirty-six page order documenting the court's findings of fact and conclusions of law. The court drafted the order after conducting a six-day evidentiary hearing. During the hearing, the court heard from thirty-one defense witnesses, including six witnesses tendered as experts, along with five state witnesses. The court further examined several exhibits including 911 recordings, police dispatch recordings, several dozen photographs, the air rifle, a .22 caliber rifle, and other items and demonstrative aids. The court also conducted a view of the scene.

### a. *The Circuit Court's Findings of Fact*

In the circuit court's findings of fact, the court recounted the officer's testimony as follows. In 2013, the officer was on road patrol when he heard a dispatch involving a disturbance with a weapon. The officer then heard a priority one alert broadcast. The officer approached the scene in a marked unit with overhead emergency lights on, but without activating the siren. The officer saw a man walking down Dixie Highway with what the officer believed was a shotgun or rifle. The officer was fearful that the man would open fire on vehicles. As the officer drove past the man, the officer believed that the man saw him, at which point the man began walking faster. Seeing the man move faster after viewing a marked unit made the officer think the man was headed somewhere with a purpose. The officer used his vehicle to block oncoming traffic on Dixie Highway. The officer then lost sight of the man. The officer feared the man was gaining a tactical advantage. The officer heard his sergeant say, "This is going to end bad," which added to the officer's fear. The officer and the sergeant began pursuing the man on foot. They spotted the man about twenty yards ahead. Both the officer and the sergeant shouted the commands "Stop!", "Police!", and "Drop the weapon!" The officer also could hear the sounds of other people, including children, from an adjacent apartment complex's pool area. The officer closed his distance from the man to approximately five to ten feet. The officer's heart was pounding and his thoughts were racing. The officer decided to react to the man's actions. If the man moved, the officer would follow. If the man stopped,

the officer would stop.  The officer and the sergeant continued to command the man to "stop" and "drop the weapon."  The man stopped, but he did not drop the weapon.  The officer believed that the man was planning his next move.  The man then brought the rifle over his head, turned towards the officer and sergeant, and pointed the rifle right at the officer.  The officer fired his gun at the man.  The officer could not recall how many times he fired, but came to learn he fired his gun three times.  The man died from the gunshots.

The circuit court found that the officer's account of the incident was consistent with the other credible witnesses' testimony and the physical evidence.  The court then found, by the greater weight of the evidence, that the man ignored repeated warnings to stop and drop the weapon, turned towards the officers, and pointed his weapon at the officers, causing the officer to be in fear for his life and the lives of others, prompting the officer to shoot at the man, resulting in the man's death.

### b. *The Circuit Court's Conclusions of Law*

In the circuit court's conclusions of law, the court began by reciting the statutes at issue, that is, sections 776.012(1), 776.032(1), and 776.05(1), Florida Statutes (2013).

In 2013, section 776.012(1) provided:

> [A] person is justified in the use of deadly force and does not have a duty to retreat if:
> (1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony[.]

§ 776.012(1), Fla. Stat. (2013).

Section 776.032(1) provided, in pertinent part:

> A person who uses force as permitted in s. 776.012 . . . is justified in using such force and is immune from criminal prosecution and civil action for the use of such force . . . .  As used in this subsection, the term "criminal prosecution" includes arresting, detaining in custody, and charging or prosecuting the defendant.

§ 776.032(1), Fla. Stat. (2013).

3

Section 776.05(1) provided, in pertinent part:

> A law enforcement officer, or any person whom the officer has summoned or directed to assist him or her, need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. The officer is justified in the use of any force:
>
> (1) Which he or she reasonably believes to be necessary to defend himself or herself or another from bodily harm while making the arrest[.]

§ 776.05(1), Fla. Stat. (2013).

Having reviewed the foregoing statutes, the circuit court then addressed the state's argument that the officer could not avail himself of Stand Your Ground immunity under sections 776.012(1) and 776.032(1) because, as a law enforcement officer, his use of force was governed solely by section 776.05(1). The state's argument rested on *Caamano*, which held, in pertinent part:

> [I]f [the officer] is entitled to any immunity under either statute in this case, then such protection must flow from section 776.05. We hold that the specific language of section 776.05, titled "Law enforcement officers; use of force in making an arrest," must apply to the behavior of law enforcement officers during the course of an arrest, rather than the language of section 776.032, which applies generally to the public at large.

*Caamano*, 105 So. 3d at 22.

The circuit court rejected the state's argument and concluded, as a matter of law, that the officer in the instant case was eligible to seek Stand Your Ground immunity under sections 776.012(1) and 776.032(1). The court articulated two reasons for its conclusion.

First, the circuit court reasoned that *Caamano* was distinguishable on its facts:

> The decision in *Caamano* and Florida Statute 776.05 specifically applied to an officer's use of force *while making an arrest.* "[I]t is undisputed that the alleged crime occurred

4

during the course of an arrest." *Caamano* at 20. The [officer] in this case was responding to an emergency and was investigating a disturbance. . . . Therefore, the limitation on law enforcement officers to proceed under section 776.05 to the exclusion of section 776.032 is distinguishable from the present case as such limitation only applies, if at all, to cases where the officer is in the process of making an arrest. Therefore this Court finds that the [officer] herein is eligible to seek immunity under Florida Statute 776.012 and 776.032 in the instant case.

(emphasis added; footnote omitted).

Second, the circuit court "urge[d] the 4th DCA to reexamine the legal holding in *Caamano.*" The circuit court observed that *Caamano* applied the rule of statutory construction known as *in pari materia* to reconcile the differences between sections 776.05 and 776.032. *See Caamano*, 105 So. 3d at 22 ("Because sections 776.05 and 776.032 address the use of justifiable force in the context of a criminal prosecution, the doctrine of in pari materia requires that we read them together and attempt to harmonize them."). However, the circuit court found that *Caamano* "need not have gone into the doctrine of *in pari materia* at all." The circuit court reasoned, in pertinent part:

In construing a statutory provision, the Court first looks to the actual language used in the statute. *See State v. Bodden*, 877 So. 2d 680[, 685] (Fla. 2004). If the plain meaning of the language is clear and unambiguous, then the Court need not delve into the principles of statutory construction unless that meaning leads to a result that is either unreasonable or clearly contrary to legislative intent. *See State v. Burris*, 875 So. 2d 408[, 410] (Fla. 2004). However, if the language is unclear or ambiguous, then the Court applies rules of statutory construction to discern legislative intent. *See Bautista* [*v. State*, 863 So. 2d 1180, 1185 (Fla. 2003)].

Florida Statute 776.012(1) reads: "**A person** is justified in the use of deadly force . . . [.]" and Florida Statute 776.032(1) grants immunity to "**A person** who uses force . . . ." *Emphasis added.* There is nothing in the term "a person" that is unclear or ambiguous. A law enforcement officer under any reasonable understanding of our language qualifies as "a person." Because the plain meaning is clear and unambiguous, the courts should refrain from trying to read it

5

as "any person, other than a law enforcement officer" through [the] use of statutory construction doctrines, maxims and tools.

(footnote omitted).

Having concluded, as a matter of law, that the officer in the instant case was *eligible* to seek Stand Your Ground immunity under sections 776.012(1) and 776.032(1), the circuit court applied its findings of fact to conclude that the officer was *entitled* to Stand Your Ground immunity:

The last question to address is whether the defendant's use of force in this case was objectively unreasonable. In *Brosseau v. Haugen*, 543 U.S. [194] (2004), the United States Supreme Court found it objectively reasonable for an officer to shoot a fleeing suspect out of fear [the suspect] endangered other officers on foot who[m] [the officer] believed were in the immediate area, the occupied vehicles in [the suspect's] path, and any other citizens who might be in the area. Recently in *Mullenix v. Luna*, 577 U.S. -- , 136 S. Ct. 305 (2015), the United States Supreme Court also noted "the law does not require the officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect." *Mullenix*, [136 S. Ct. at 311], quoting *Long v. Slaton*, 508 F.3d 576[, 581] ([11th Cir.] 2007). "The court also rejected the notion that the deputy should have first tried less lethal methods . . . 'we think the police need not have taken that chance and hoped for the best[.]'" *Mullenix*, [136 S. Ct. at 311-12], quoting *Long v. Slaton*, [508 F.3d] at 583. The arguments advanced in *Mullenix*, *Brosseau*, and *Long*, *supra*, are no less compelling than the rationale for the use of force in the present case.

The defendant testified that a deadly weapon was pointed directly at him and towards other Deputies responding with him. He testified that he was in fear for his life, the lives of his fellow officers and the various people in the area, including children at the pool. Instruction 3.6(f) of the Florida Standard Jury Instructions on justifiable use of deadly force states in part:

In deciding whether the defendant was justified in the use of deadly force, you must consider the circumstances by which he was

6

surrounded at the time the force was used. The danger need not have been actual; however, to justify the use of deadly force, the appearance of danger must have been so real that a reasonably cautious and prudent person under the same circumstances would have believed that the danger could have been avoided only through the use of that force. Based upon appearances, the defendant must have actually believed that the danger was real.

Based on the court's factual findings, the Court concludes that the [officer's] application of deadly force in the instant case was objectively reasonable.

. . . .

This Court therefore finds that the [officer] is entitled to immunity under F.S. 776.032 as a result of the justifiable use of deadly force pursuant to F.S. 776.012 notwithstanding his occupation as a law enforcement officer.

(footnote omitted).

## 2. *The Parties' Arguments on Appeal*

### a. *The State's Arguments*

The state primarily argues in this appeal that the circuit court improperly granted immunity as a matter of law to the officer pursuant to sections 776.012(1) and 776.032(1).

According to the state, because the officer was attempting an arrest, *Caamano* is factually on point and, pursuant to *Caamano*, the officer was not permitted to claim immunity pursuant to sections 776.012(1) and 776.032(1), which applies generally to all persons using force.

Instead, the state argues, because the officer was attempting an arrest, he was required to proceed pursuant to the more specific section 776.05(1), which applies to law enforcement officers using force in attempting an arrest.

According to the state, section 776.05(1) allowed the officer to assert a claim of qualified immunity, for which the officer would not be entitled to

7

a pre-trial evidentiary hearing and dismissal as permitted under section 776.032(1), but only an affirmative defense at trial to be determined by the factfinder.

To support that point, the state cites to a number of civil cases holding that where issues of fact exist regarding whether an officer is entitled to immunity, summary judgment was not applicable and a trial determination was appropriate.

In sum, the state argues:

> [T]his Court should follow the reasoning of *Caamano* and reverse the [circuit] court order because where the actions of a law enforcement officer using force in the line of duty are concerned, the <u>specific</u> language of [section] 776.05[(1)] should apply, not the <u>general</u> language of [section] 776.032[(1)]. Additionally, because the question of whether qualified immunity pursuant to [section] 776.05[(1)] applies[] is for the jury not the judge, the order granting immunity must be reversed and this case remanded for a jury trial.

### b. *The Officer's Arguments*

In response, the officer argues the circuit court properly granted immunity to him pursuant to sections 776.012(1) and 776.032(1). Specifically, the officer argues that based on the circuit court's findings of fact that he was responding to an emergency and not making an arrest, he was entitled to absolute immunity under section 776.032(1), and not merely an affirmative defense at trial under section 776.05(1). According to the officer, a court may not deny a motion seeking absolute immunity under section 776.032(1) simply because factual disputes exist.

The officer also argues, to the extent *Caamano* found that allowing a law enforcement officer to seek absolute immunity under section 776.032(1) would abrogate section 776.05(1), *Caamano* was wrongly decided. According to the officer, even though section 776.05(1) allows law enforcement officers, charged with the use of excessive force during an arrest, to claim the right of self-defense at trial, law enforcement officers still may seek absolute immunity under section 776.032(1) before a trial. To support this argument, the officer seeks to harmonize sections 776.032(1) and 776.05(1) by proposing the following example:

> A police officer goes to arrest a suspect. A scuffle ensues wherein the suspect reaches for the police officer's gun. The

police officer is able to wrestle the suspect's hand away from his gun and ultimately ends up shooting the suspect. The police officer is charged with manslaughter . . . . The [officer] asserts self-defense and files a motion to dismiss based on Stand Your Ground immunity and there is a pretrial hearing on the matter. The Trial Court rules that immunity does not attach. The [officer] then proceeds to trial and maintains a self-defense claim. At trial, the [officer], although he is a police officer, is still entitled to rely upon Florida Standard Jury Instruction 3.6(f) but is also entitled to the additional protection of [section] 776.05[(1)] which **expands** a police officer's right to employ force to defend him[self] or herself or others.

The officer finally argues "it would be difficult to imagine that the Florida Legislature would intend to extend immunity to the general public in a self defense case yet not extend the same right to those who take an oath to uphold the law and protect the public[,] [t]hereby abrogating a law enforcement officer's right to assert immunity and forcing them to assert an affirmative defense at trial."

### 3. *Our Examination of* Caamano

Because *Caamano* lies at the heart of the circuit court's order and the parties' arguments on appeal, we examine *Caamano* in greater detail.

In *Caamano*, the state alleged the following facts. As a street party was dispersing, one individual refused to comply with police orders to exit the street. An officer physically engaged the individual by escorting him to a grassy area beside the roadway and taking him to the ground, but the individual resisted. Two other officers assisted in detaining the individual by delivering knee and hand strikes and using a taser to "drive stun" him. *Id.* at 19.

While the individual was face down on the ground after having been beaten and tased by a group of law enforcement officers, Officer Caamano approached. Caamano raised his right foot and "br[ought] it down in a stomping motion" towards the individual's legs, saying "put your hands behind your back" as he did so. *Id.*

The state alleged specifically that Caamano's actions did not assist the other officers with bringing the individual into custody, and that the detained individual did not exhibit any active resistance toward Caamano. Instead, the state alleged that "his stomp served no purpose other than to

bring unjustified and unnecessary force to [the individual], who was already engaged by three other officers." *Id.*

The state charged Caamano with attempted battery, a second-degree misdemeanor.

Caamano moved to dismiss the charge, initially alleging immunity pursuant to section 776.05(1), Florida Statutes (2010), which the Second District stated "provides *qualified immunity* for a law enforcement officer's use of force in making an arrest." (emphasis added). *Id.* Caamano later amended his motion to allege instead that he was immune from criminal prosecution pursuant to section 776.032(1), the Stand Your Ground law.

The county court denied the amended motion. *Id.* at 19-20. The county court found that because Caamano was a law enforcement officer, and it was undisputed that the alleged crime occurred during the course of an arrest, he was not entitled to invoke the protection described in section 776.032(1). *Id.* at 20.

Caamano then petitioned the circuit court for a writ of prohibition, arguing that because section 776.032(1) does not expressly exclude law enforcement officers from its protection, he was entitled to invoke the protection of either statute. *Id.*

The circuit court granted Caamano's petition, finding "nothing in the law that prevents [Caamano] from asserting immunity pursuant to Section 776.032[(1)]." *Id.* The circuit court's order vacated the county court's order and directed the county court to conduct an evidentiary hearing pursuant to section 776.032(1).

The state filed a petition for writ of certiorari, arguing that the circuit court departed from the essential requirements of the law.

The Second District granted the petition, concluding that the circuit court departed from the essential requirements of the law in vacating the county court's order. *Id.* at 19. The Second District reasoned:

> In construing a statute, a court's purpose is to give effect to legislative intent, which is the polestar that guides the court in statutory construction. In order to determine legislative intent, one must first look to the actual wording of the statute and give it its appropriate meaning. Then, the doctrine of in pari materia applies. This doctrine is a principle of statutory construction that requires that statutes relating to the same

10

subject or object be construed together to harmonize the statutes and to give effect to the Legislature's intent. Consequently, related statutory provisions must be read together to achieve a consistent whole, and where possible, courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another.

Further, when construing multiple statutes addressing similar subjects, the specific statute controls over the general. In *Mendenhall v. State,* 48 So. 3d 740, 748 (Fla. 2010), the Florida Supreme Court identified that

> [i]t is a well settled rule of statutory construction . . . that a special statute covering a particular subject matter is controlling over a general statutory provision covering the same and other subjects in general terms. In this situation the statute relating to the particular part of the general subject will operate as an exception to or qualification of the general terms of the more comprehensive statute to the extent only of the repugnancy, if any.

To hold otherwise would render the specific language meaningless. *See Mendenhall,* 48 So. 3d at 749.

Here, the State argues that the circuit court, acting in its appellate capacity, departed from the essential requirements of the law by applying the incorrect law. Specifically, the State argues that by ordering the county court to conduct an evidentiary hearing under section 776.032[(1)], the Stand Your Ground statute, rather than proceeding under section 776.05[(1)], the statute specific to law enforcement, the circuit court stripped section 776.05[(1)] of meaning. We agree.

. . . .

[T]he circuit court departed from the essential requirements of the law by applying the incorrect law. . . . Because sections 776.05[(1)] and 776.032[(1)] address the use of justifiable force in the context of a criminal prosecution, the doctrine of in pari materia requires that we read them together and attempt to harmonize them.

11

Upon such a review, it is evident that if Caamano is entitled to any immunity under either statute in this case, then such protection must flow from section 776.05[(1)]. We hold that the specific language of section 776.05[(1)], titled "Law enforcement officers; use of force in making an arrest," must apply to the behavior of law enforcement officers during the course of an arrest, rather than the language of section 776.032[(1)], which applies generally to the public at large. We agree with the State's argument that holding otherwise would render the specific statute meaningless. *See Mendenhall,* 48 So. 3d at 749. Accordingly, we grant the petition, quash the order of the circuit court, and remand the case for proceedings consistent with this opinion.

105 So. 3d at 20-22 (other internal citations and footnote omitted).

### 4. *Our Review*

We employ a mixed standard of review. We review the circuit court's findings of fact to determine if such findings are supported by competent substantial evidence, and we review the circuit court's legal conclusions de novo. *See Joseph v. State,* 103 So. 3d 227, 229-30 (Fla. 4th DCA 2012) (in reviewing a trial court's order on a motion to dismiss claiming immunity under section 776.032(1), "[t]he trial court's factual findings are entitled to deference and must be supported by competent substantial evidence. . . . The trial court's legal conclusions are reviewed *de novo.*"). To the extent we review the circuit court's interpretation of sections 776.012(1), 776.032(1), and 776.05(1), our review also is de novo. *See Bretherick v. State,* 170 So. 3d 766, 771 (Fla. 2015) (an issue of statutory interpretation under section 776.032(1) is reviewed de novo).

We conclude the circuit court's findings of fact are supported by competent substantial evidence. The record supports the circuit court's finding that the officer's account of the incident was consistent with the other credible witnesses' testimony and the physical evidence. The record also supports the circuit court's finding that the man ignored repeated warnings to stop and drop the weapon, turned towards the officers, and pointed his weapon at the officers, causing the officer to be in fear for his life and the lives of others, prompting the officer to shoot at the man, resulting in the man's death.

The circuit court's most significant finding of fact is that the officer was responding to an emergency and investigating a disturbance, but was not

making an arrest. That finding of fact is significant because, if true, it eliminates section 776.05's application to this case and distinguishes this case from *Caamano*, where three officers already had detained the suspect before Officer Caamano used unnecessary force against the suspect.

While we conclude the finding of fact here that the officer was responding to an emergency and investigating a disturbance was supported by competent substantial evidence, we also recognize an argument could be made that the officer here was in fact making an arrest. As the circuit court found, after the officer and his sergeant spotted the man about twenty yards from them, both the officer and the sergeant shouted the commands "Stop!", "Police!", and "Drop the weapon!" The officer then closed his distance from the man to approximately five to ten feet, and continued to command the man to "stop" and "drop the weapon." It is reasonable to conclude that the officer was taking these actions to make an arrest, and not merely to investigate the man's intentions.

Assuming that the officer was making an arrest, then we are squarely faced with the legal question which the circuit court called to our attention. That is, whether *Caamano* correctly held that if an officer is entitled to any immunity during the course of an arrest, then such protection must flow from section 776.05, which applies specifically to law enforcement officers, rather than section 776.032, which applies generally to the public at large.

We disagree with *Caamano*. We hold that a law enforcement officer, who while making a lawful arrest, uses deadly force which he or she reasonably believes is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony, is *not limited* to invoking a defense under section 776.05(1), but is also permitted to seek immunity from criminal prosecution under sections 776.012(1) and 776.032(1).

In reaching our holding, we agree with the circuit court that sections 776.012(1)'s and 776.032(1)'s plain language dictates this conclusion. In 2013, section 776.012(1) provided:

> [*A*] ***person*** is justified in the use of deadly force and does not have a duty to retreat if:
> (1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony[.]

§ 776.012(1), Fla. Stat. (2013) (emphasis added).

Section 776.032(1) provided, in pertinent part:

> ***A person*** who uses force as permitted in s. 776.012 . . . is justified in using such force and is immune from criminal prosecution and civil action for the use of such force . . . .  As used in this subsection, the term "criminal prosecution" includes arresting, detaining in custody, and charging or prosecuting the defendant.

§ 776.032(1), Fla. Stat. (2013).

As the circuit court found, "There is nothing in the term 'a person' that is unclear or ambiguous.  A law enforcement officer under any reasonable understanding of our language qualifies as 'a person.'"  Because sections 776.012(1)'s and 776.032(1)'s plain language is clear and unambiguous, the officer in this case was permitted to seek immunity from criminal prosecution under sections 776.012(1) and 776.032(1).  *See McNeil v. State*, 215 So. 3d 55, 58 (Fla. 2017) ("When the plain language of the statute is unambiguous and conveys a clear meaning, the statute must be given its obvious meaning.").

The source of our disagreement with *Caamano* appears to arise from the following statement from that case:  "In order to determine legislative intent, one must first look to the actual wording of the statute and give it its appropriate meaning.  *Then, the doctrine of in pari materia applies*."  105 So. 3d at 20 (emphasis added).  Respectfully, to suggest that the doctrine of in pari materia applies in every case is incorrect as a matter of law.  As the circuit court correctly found in this case, because sections 776.012(1)'s and 776.032(1)'s plain language is clear and unambiguous, *Caamano* "need not have gone into the doctrine of *in pari materia* at all."  *See English v. State,* 191 So. 3d 448, 450 (Fla. 2016) ("When the statutory language is clear or unambiguous, this Court need not look behind the statute's plain language *or employ principles of statutory construction* to determine legislative intent.") (emphasis added).

Having concluded, as a matter of law, that the officer in the instant case was *eligible* to seek Stand Your Ground immunity under sections 776.012 and 776.032, we also conclude, based on the circuit court's findings of fact, that the officer was *entitled* to Stand Your Ground immunity.  We agree with the circuit court that the officer reasonably believed using deadly force was necessary to prevent imminent death or great bodily harm to himself, his sergeant, and the nearby citizens.  We adopt the circuit court's well-articulated reasoning in this regard as our own.

We also agree with the officer's argument in response to the state's secondary argument on appeal.  That is, as the officer argues, a court may not deny a motion seeking immunity under sections 776.012(1) and 776.032(1) simply because factual disputes may exist.  *See Dennis v. State*, 51 So. 3d 456, 462 (Fla. 2010) ("Section 776.032 does not limit its grant of immunity to cases where the material facts are undisputed.").

### *Conclusion*

Based on the foregoing, we affirm the circuit court's final order granting the officer's amended motion to dismiss the indictment against him for manslaughter with a firearm.  Specifically, we affirm the circuit court's conclusion that the officer was entitled to immunity from prosecution under sections 776.012(1) and 776.032(1), Florida Statutes (2013), more commonly known as Florida's "Stand Your Ground" law.  We also affirm on the state's second argument on appeal without further discussion.

We certify conflict with *Caamano*.  We also certify to our supreme court the following question of great public importance:

> WHETHER A LAW ENFORCEMENT OFFICER, *WHO WHILE MAKING A LAWFUL ARREST*, USES DEADLY FORCE WHICH HE OR SHE REASONABLY BELIEVES IS NECESSARY TO PREVENT IMMINENT DEATH OR GREAT BODILY HARM TO HIMSELF OR HERSELF OR ANOTHER OR TO PREVENT THE IMMINENT COMMISSION OF A FORCIBLE FELONY, IS LIMITED TO INVOKING A DEFENSE UNDER SECTION 776.05(1), OR IS *ALSO* PERMITTED TO SEEK IMMUNITY FROM CRIMINAL PROSECUTION UNDER SECTIONS 776.012(1) AND 776.032(1), FLORIDA STATUTES (2013), MORE COMMONLY KNOWN AS FLORIDA'S "STAND YOUR GROUND" LAW.

*Affirmed; conflict certified; question of great public importance certified.*

GROSS and KUNTZ, JJ., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**